STATE OF IOWA, v. ANDREW P. THOMPSON, Appellant.

Inland lakes: RIGHTS OF RIPARIAN OWNERS. A riparian owner of land bordering on an inland lake, in which the water raises and lowers as dictated by the seasons and climatic conditions, takes only to high water mark.

*Appeal from Hancock District Court.*— HON. CLIFFORD P. SMITH, Judge.

WEDNESDAY, APRIL 3, 1907.

ACTION in equity for an injunction decree. The opinion states the case. A decree as prayed for was granted, and the defendant appeals.— *Affirmed.*

*Peterson & Knapp,* for appellant.

*C. W. Mullan,* Attorney-General, *John Hammill,* and *John E. Wickman (H. W. Byers,* present Attorney-General, on the brief), for the State.

BISHOP, J.— This action was brought on behalf of the State to enjoin the defendant from proceeding with the work of constructing a ditch designed to drain off the waters from West Twin Lake in Hancock county. As meandered by government survey, the lake embraces about one hundred and twenty-two acres, and defendant owns all the adjoining lands lying to the east and west and south thereof. It is conceded that waters of the lake are gathered from the fall of rain and snow and by drainage from the surrounding lands; there

is no inlet stream, nor at present any spring.    It is the theory upon which the action is brought that the bed of said lake within the meander lines is the sole property of the State, and that to drain the same or decrease the depth of water therein by artificial means as designed .and being attempted by defendant would be contrary to the rights of the State, and violative of its policy to preserve all lakes within its borders. · It is not denied by defendant but that, on its admission to the Union, the State became the owner of all lands forming the bed of the inland lakes within its borders, which had been meadered by government survey and excluded from the public lands as was the lake in question.    It is the contention of defendant that, as in the course of years the lands in the vicinity have come into occupation and cultivation for farming purposes, the waters of the lake have gradually and imperceptibly receded from the original shore line until the lake bed has become practically dry : there being for the most part only pools of stagnant water remaining in the deeper depressions of the bed, and constituting a menace and danger to the public health, convenience, etc.    And it is said that as the shore line has receded, plaintiff has taken possession of the bed lands, and has used the same for the purposes of hay and pasture lands, and that beginning about the year 1895 he has thus been in the occupation and use of the entire bed under fenced inclosure.    From this, and pinning his faith to the doctrine of accretion and reliction, the claim is made that defendant, as riparian owner, became vested with exclusive right and title to all such lands.

Counsel on both sides have been at pains to discuss exhaustively in argument the law defining riparian ownership and the rights growing out of the same; but, as we read the record, the facts are against the contention of defendant, and, accordingly, we shall have but little occasion to take note of the legal phase of the case.    That at the time of the meander survey, the lake was a well-defined body of water, with gravel or sand beach and high banks, is not seriously ques-

tioned.    It is true that since then the stage of water has fluctuated.    In seasons of average rainfall the bed has been covered, and frequently to the depth of six or more feet in the center portion: the shore line reaching nearly if not quite to the meander line.    In dry seasons the water surface has been lowered, and in the three years beginning with 1899 — a succession of dry seasons — the water disappeared except in pools here and there as the natural depression in the bed permitted.    Following those years the lake again filled, and, at the time of the trial of this case, the entire bed was covered with water to the depth of six feet in the center: the shore line reaching to and in places overlapping the meander line.    It is the testimony that the water is clear, and during a number of winters ice had been harvested from the lake for domestic consumption.    Originally there were game fish in the lake, but these disappeared with the dry seasons of which mention has been made.    It appears, however, that in the summer of 1903, the lake was again stocked with fish under the direction of the State Fish Commissioner.    While not altogether undisputed, the foregoing are the facts as fairly established by the evidence. The case we have, then, is one presenting a lake with stages of water alternating from high to low as dictated by the seasons and climatic conditions.    With such fact situation before us, it becomes clear that we need not enter the field of discussion presented by a case where there has been a practically complete and permanent recession of water from a lake bed.    It is the rule in this State that as related to an inland lake a riparian owner takes to high-water mark only. *McManus v. Carmichael,* 3 Iowa, 1; *Tomlin v. Railway,* 32 Iowa, 106; *Noyes v. Collins,* 92 Iowa, 566; *Barney v. Keokuk,* 94 U. S. 324 (24 L. Ed. 224).

It follows that, as the defendant had acquired no rights in the lake bed in question, such as to authorize him to drain it by artificial means, the decree enjoining him from proceeding with the work of drainage as commenced was properly entered.— *Affirmed.*