HARTZ *v.* DETROIT, PLYMOUTH & NORTHVILLE RAILWAY.

1. EJECTMENT — PLEADING — DECLARATION — AMENDMENT — PRO-
PRIETY.
Where a declaration in ejectment described the entire piece of
land owned by the plaintiff, only a small portion of which
was involved in the suit, an amendment describing particu-
larly the disputed piece was properly allowed.

2. WATERS AND WATERCOURSES — RIPARIAN RIGHTS — BED OF
STREAM—OWNERSHIP.
The owner of lands abutting on a watercourse owns to the mid-
dle of the stream.

3. SAME—MILL POND—OWNER OF SHORE—OWNERSHIP OF BED.
Where the title of the owner of lands abutting on an artificial
mill pond, formed by damming the stream, is derived from
deeds describing his land as running "along the bank of said
mill pond" and as running "along the edge of said mill pond,"
he owns to the middle of the thread of the stream, including
the right to the water front, and the use of the water in the
stream in its natural state, in case the pond should be dis-
continued.

Error to Wayne; Hosmer, J. Submitted June 8, 1908.
(Docket No. 47.)    Decided June 27, 1908.

Ejectment by John C. Hartz against the Detroit, Ply-
mouth & Northville Railway. There was judgment for
plaintiff on a verdict directed by the court, and defendant
brings error. Affirmed.

*C. C. Yerkes*, for appellant.

*Keena, Lightner & Oxtoby*, for appellee.

GRANT, C. J. This is an action of ejectment. After
suit was commenced, the defendant filed a bill of com-
plaint to enjoin the further prosecution of the suit, which
was decided both in the circuit court in chancery and in
this court against the contention of the defendant. *De-*

*troit, etc., R. Co. v. Hartz*, 147 Mich. 354. The suit at law was afterwards tried, in which the plaintiff recovered a judgment.

Two questions are raised:

1. Did the court err in permitting an amendment to the declaration? The original declaration contained the description of the entire piece of land owned by the plaintiff, only a small part of which was involved in the suit. The court permitted an amendment describing particularly the disputed piece of land. The defendant insists that the declaration, not containing the specific description in dispute, was fatally defective and not subject to amendment. This contention is answered by *Ludeman* v. *Hirth*, 96 Mich. 17; *Hoban* v. *Cable*, 102 Mich. 213. The amendment was proper.

2. The second question, as stated by the defendant's counsel, is, "Does the fee of plaintiff extend to the thread of the stream in the mill pond or stop at its banks?" Plaintiff owns the land on both sides of the stream and pond. In one of plaintiff's deeds the land is described as running "along the bank of said mill pond, * * * to the southeast corner of the bridge of said highway." The description of the deed conveying the land upon the other side of the pond, runs "southerly along the edge of said mill pond to the center of the highway." The defendant's bridge extends over the lower end of this mill pond about 20 feet above, and parallel to, the highway bridge, standing practically at the point where the stream leaves the pond.

It is the settled law in Michigan that the owner of lands abutting on a watercourse owns to the middle of the stream. *Butler* v. *Railroad Co.*, 85 Mich. 246, affirmed by the Supreme Court of the United States, *Grand Rapids, etc., R. Co.* v. *Butler*, 159 U. S. 87. The Supreme Court of the United States, speaking through Chief Justice Fuller, said:

"In Michigan the common law prevails, and the rule is sustained by an unbroken line of authorities that a

grant of land bounded by a stream, whether navigable in fact or not, carries with it the bed of the stream to the center of the thread thereof."

This is conceded by the learned counsel for the defendant, but he insists that there is a distinction to be drawn between natural and artificial streams and ponds. The stream in this case is not an artificial one. The boundaries of the stream have been changed by artificial means. Counsel cite no case in Michigan where this precise question has been raised.

Where the boundary of the land conveyed was described as "east by the pond" (an artificial one), it was held that the grantee took to the middle of the original stream the same as if no pond existed. *Mill River Woolen Manfg. Co.* v. *Smith*, 34 Conn. 462.

So, where an artificial pond was created by damming a stream, it was held that "the same rule applies to the pond as to the stream before the dam was built." *Mansur* v. *Blake*, 62 Me. 38. A like holding is found in *Lowell* v. *Robinson*, 16 Me. 357. See, also, *Paine* v. *Woods*, 108 Mass. 160, at pages 169, 170; *Wheeler* v. *Spinola*, 54 N. Y. 377; *Waterman* v. *Johnson*, 13 Pick. (Mass.) 261; 5 Cyc. p. 900; 4 Am. & Eng. Enc. Law (2d Ed.), p. 832.

There is nothing in the language of these deeds to indicate an intention on the part of the grantors to retain title to the land lying between the edge of the water of this pond and the middle thread of the stream. It seems to us reasonable to hold that these deeds conveyed to the plaintiff the right to the water front and for the use of the water in the stream in its natural state, should the artificial pond be discontinued. It follows that the circuit judge was right in directing a verdict for the plaintiff for the land covered by the bridge.

The judgment is affirmed.

BLAIR, MOORE, CARPENTER, and MCALVAY, JJ., concurred.