## IN RE JUDICIAL DITCH PROCEEDING NO. 15 OF FARIBAULT COUNTY.

## PAUL TROSKA AND OTHERS v. F. J. BRECHT AND OTHERS.[1]

May 24, 1918.

No. 20,822.

**Judicial ditch — court may vacate order for it.**

1. The district court has power to vacate an order establishing a judicial ditch if the facts presented warrant such action, and did not exceed its power in the present case.

**Same — drainage of lake — vote of adjacent village.**

2. A village whose streets extend to a meandered lake is a riparian owner thereon, and the lake cannot be drained without an affirmative vote of the voters of the village.

[1]Reported in 167 N. W. 1042.

**Same — recession of waters of meandered lake.**

> 3. The recession of the waters of a lake must be permanent, not temporary, in order to cause the lake to lose its character as such.

**Same — objector not estopped from asking a rehearing.**

> 4. Appearing as a witness at the final hearing in a judicial ditch proceeding does not estop an objector from applying for a rehearing if he can show sufficient grounds therefor.

F. J. Brecht and others petitioned the district court for Faribault county for the construction of a certain ditch designated as Judicial Ditch No. 15, and after the report of the engineer and viewers thereon had been filed, an order was entered establishing the ditch. Paul Troska and others filed objections to the order for its establishment and obtained an order directing the petitioners for the ditch to show cause why the order establishing it should not be vacated. The petitioners appeared specially and objected to the jurisdiction of the court to hear and determine the matter and moved to dismiss the application of the objectors. The motion was heard and the order to establish the ditch was vacated, Dean, J., and a rehearing ordered on the reports of the engineer and viewers. At the rehearing objectors' motion that the ditch proceedings be dismissed was granted and an order filed refusing to establish the ditch. From that order, petitioners appealed. Affirmed.

*Putnam & Carlson* and *Haycraft & Palmer,* for appellants.
*Henry A. Morgan* and *Moonan & Moonan,* for respondents.

TAYLOR, C.

This is a proceeding to establish a judicial ditch for the purpose of draining Minnesota lake, a meandered body of water covering about 2,000 acres in Faribault and Blue Earth counties.

The preliminary hearing was held on March 27, 1916, at which time the engineer and viewers were appointed, but they did not make their reports until the following November. Notice of the hearing to consider these reports was given on December 4, 1916; the hearing was held on December 27, 1916; and an order establishing the ditch was made on December 29, 1916, and filed on the following day.

Upon an application on behalf of 134 persons who were opposed to the construction of the ditch, the court, on January 18, 1917, issued

an order to show cause why the order of December 29, 1916, establishing the ditch, should not be vacated and a rehearing be granted upon the reports of the engineer and viewers. In support of the application for a rehearing it was shown that Henry A. Morgan of Albert Lea had been the sole attorney for the objectors to the ditch; that he had appeared for them at the preliminary hearing in March; that he never had any notice of the hearing in December; that at the time the notice of that hearing was given he was engaged in the trial of a case in the United States court at Omaha, Nebraska; that in the midst of this trial he became ill and remained at Omaha too ill to receive any business communication until after the making of the order of December 29; that the objectors were assured by the stenographer in Morgan's office at Albert Lea that Morgan would arrange for a continuance of the hearing if unable to be present at the time fixed, and that the objectors relied upon Morgan to care for their interests without learning that he was too ill to do so until too late to make other arrangements. The showing disclosed meritorious objections to the ditch and amply justified the court in exercising its discretionary power to relieve the objectors from their default. The court made an order, dated April 12, 1917, granting a rehearing and vacating the order of December 29, 1916, establishing the ditch.

At the rehearing, a large amount of evidence was submitted, and, at the conclusion of the evidence, the objectors moved that the proceeding to establish the ditch be dismissed upon two grounds: (1) That the incorporated village of Minnesota Lake abuts upon the lake and is a riparian owner thereon and has never voted in favor of the drainage of the lake; (2) "that the evidence is wholly insufficient to establish the allegations of the petition or sustain the proceedings here in question or warrant the establishment of the ditch in question." The court granted this motion and dismissed the entire proceeding. The petitioners appealed from the order of dismissal.

Relying upon State v. Anding, 132 Minn. 36, 155 N. W. 1048, the petitioners contend that the court had no power to vacate the order establishing the ditch, and that the order of April 12, 1917, granting a rehearing was of no force or effect for lack of power to make it. We are unable to sustain this contention. It is true that the case cited

held that a board of county commissioners, after establishing a state rural highway under the so-called Elwell law, could not arbitrarily abandon the project by a resolution to that effect. It is also true that the procedure for laying out and establishing state rural highways under the Elwell law is the same as the procedure for establishing county and judicial ditches. But conceding that the Anding case decides that the board of county commissioners cannot set aside and annul an order establishing a county ditch, it does not follow that the district court cannot vacate an order establishing a judicial ditch.

Sections 7746 and 7786, G. S. 1913, apply to the district court and enlarge, define and regulate the inherent power of that court to control and correct the proceedings had before it and to amend or set aside its orders and judgments; but these sections do not apply to the board of county commissioners nor confer any authority upon such boards. Section 7786 provides: "The court in its discretion * * * may relieve a party from any judgment, order or other proceeding taken against him through his mistake, inadvertence, or excusable neglect; or may for good cause shown, modify or set aside its judgments, orders, or proceedings, whether made in or out of term, and may supply any omission in any proceeding, or in the record, or by amendment conform any proceeding to the statute under which it was taken." The purpose of this statute is to further justice, and it must be liberally construed to enable the court to determine the rights of parties upon the merits. Waller v. Waller, 102 Minn. 405, 113 N. W. 1013. It applies to all sorts of actions and proceedings. 2 Dunnell, Minn. Dig. § 5011, and cases there cited. The industry of counsel has found no case holding that it does not apply to special statutory proceedings as well as to ordinary actions. In re Judicial Ditch No. 52, 131 Minn. 372, 374, 155 N. W. 626, the court referring to sections 7746 and 7786, said, "We have no doubt that they apply to the ordinary procedure in ditch proceedings and other special proceedings, as well as to actions which proceed according to the course of the common law."

Recognizing that these sections have already been construed to apply to special statutory proceedings, the petitioners take the position that they apply only to those matters of procedure which precede the rendition of the final judgment in such proceedings, but do not apply to such final

judgment. We find no sufficient reason for holding that those provisions of section 7786 which are applicable to matters preceding the rendition of final judgment do apply to proceedings for establishing a judicial ditch, but that those provisions of that section applicable to a final judgment do not apply to the final order or judgment establishing such ditch. The language of the statute furnishes no basis for any such distinction; neither do our prior decisions. In re Minneapolis Railway Terminal Co. 38 Minn. 157, 36 N. W. 105; City of Duluth v. Dibblee, 62 Minn. 18, 63 N. W. 1117; In re Judicial Ditch No. 52, 131 Minn. 372, 155 N. W. 626; Minneapolis, St. P. R. & D. Ele. T. Co. v. Grimes, 128 Minn. 321, 150 N. W. 180, 906; State v. District Court of Rice County, 134 Minn. 189, 158 N. W. 825; Hoff v. Hoff, 133 Minn. 86, 157 N. W. 999. We have no doubt that the court had power to make the order in question.

Section 5523, G. S. 1913, as amended by section 1 of chapter 300, p. 426, of the Laws of 1915 provides: "No meandered lake upon which any city or village is now a riparian owner shall be drained or lowered unless by the approval of a majority vote of the legal voters of said city or village at any annual or special election held for such purpose."

It is admitted that the lake sought to be drained is a meandered lake; that the incorporated village of Minnesota Lake borders upon the lake; that two streets of the village extend to the lake and have been in constant use for more than 20 years, and that the voters of the village have never authorized or approved the draining of the lake. The petitioners concede these facts, but contend that the village is not a riparian owner on the lake, for the reason that it has only an easement in the streets which reach the lake and does not own the fee of any land which borders on the lake. They insist that in order to be a riparian owner the village must own the fee to a portion of the lake shore. They state in their brief: "The precise question then is, 'What is a riparian owner?' The status of the village and its claim is undisputed, in fact, stipulated. The village is not, and does not claim to be, the fee owner of any land bordering on the lake. Its claim, and its only claim, is by the right of an easement in a street or streets. If then, a riparian owner is only a fee owner, the village is not a riparian owner. If an easement constitutes riparian ownership, the village is a riparian owner." In addition

to a number of cases defining a riparian owner in general terms, they cite Brisbine v. St. Paul & S. C. R. Co. 23 Minn. 114; Hanford v. St. Paul & D. R. Co. 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L. R. A. 722; Wait v. May, 48 Minn. 453, 51 N. W. 471, among other cases; and argue that as the existence of a city street along the shore does not relieve a railway company which constructs its railroad in the street along the shore from liability to the owner of the fee for damage to his riparian rights, only an owner in fee possesses such rights. We cannot assent to this proposition. We are satisfied both on principle and authority that others than fee owners may possess riparian rights.

In the Hanford case, supra, the court held that the railway company acquired riparian rights by its condemnation proceedings, even if it acquired only an easement in its right of way.

In Village of Wayzata v. Great Northern Ry. Co. 50 Minn. 438, 52 N. W. 913, the court say: "Where the grant or dedication to the public is for the purpose of passage, and goes to the water, the conclusion—there being no indication of a contrary intention—is inevitable that the grant or dedication was intended to enable the public to get to the water for the better enjoyment of the public right of navigation."

In Barney v. Keokuk, 94 U. S. 324, 24 L. ed. 224, the Supreme Court of the United States say: "Although it should be conceded that the title of the plaintiff attached to the ground reclaimed and filled in by the city outside of the original highwater, it was a bare legal title, subject to the public easement and use, not only for street purposes, but for the purposes of wharves, landings and levees. A street bordering on the river, as this did, according to the plan of the town adopted by the decree of partition, must be regarded as intended to be used for the purposes of access to the river, and the usual accommodations of navigation in such a connection. * * * The principles laid down in all the later cases apply as well where the title of the soil is in the adjacent proprietor as where it is in the city or a third party. And, as before remarked, we can perceive no well founded difference in principle between the one and the other as to the rights of the public." This doctrine is reiterated by the same court in Potomac Steamboat Co. v. Upper Potomac Steamboat Co. 109 U. S. 672, 3 Sup. Ct. 445, 4 Sup. Ct. 15, 27 L. ed. 1070, and the court adds: "It never was questioned that, as

to the streets whose termini abutted on the river, the water front was subject to the riparian rights of the public for use as wharf or dock or landing place."

In Godfrey v. City of Alton, 12 Ill. 29, 52 Am. Dec. 476, the Illinois court say:

"Where an easement is granted to the public, upon the margin of a navigable stream, the right to use and treat it as a landing is undoubted. Having dedicated the banks of the river, this united the two easements, each of which was essential to the full enjoyment of the other."

In Balliet v. The Commonwealth, 17 Pa. St. 509, 55 Am. Dec. 581, the Pennsylvania court say: "When one road commences or terminates at another road, it is intended to furnish a passage from and to that other; and the same rule applies to a road terminating at a navigable river. This road terminating at such a river, is intended as a means of public communication between the river and the county adjoining."

To the same effect see Backus v. City of Detroit, 49 Mich. 110, 13 N.W. 380, 43 Am. Rep. 447; Village of Pewaukee v. Savoy, 103 Wis. 271, 79 N. W. 436, 50 L. R. A. 836, 74 Am. St. 859; M'Closkey v. Pacific Coast Co. 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673; City of Buffalo v. Delaware, L. & W. Ry. Co. 190 N. Y. 84, 82 N. E. 513, 16 L.R.A.(N.S.) 506; McMurray v. Mayor of Baltimore, 54 Md. 103; Chlopeck Fish Co. v. City of Seattle, 64 Wash. 315, 117 Pac. 232; Rowan's Exrs. v. Town of Portland, 47 Ky. 232; 3 Dillon, Municipal Corp. (5th ed.) § 1136; Tiedeman, Municipal Corp. § 224; 1 Farnum, Waters, § 144a.

The fact that the streets of the village extended to the lake gave the public the right to use the termini of the streets as a landing place in going to and from the lake; and to this extent at least, the village, as the representative of the public, possesses riparian rights; and this is sufficient to make it a riparian owner within the meaning of the statute.

The petitioners claim that Minnesota lake, although meandered by the government surveyors, ceased to be a meandered lake for the reason that it dried up during the unusually dry seasons prior to 1900. But the lake again filled up from natural causes in 1902, and has remained substantially in its original condition ever since. The lake did not lose its character as a meandered lake by a mere temporary recession of its

waters; to have that effect the recession must be permanent. Anderson v. Ray, 37 S. D. 17, 156 N. W. 591; State v. Thompson, 134 Iowa, 25, 111 N. W. 328.

The petitioners contend that Troska, who made the application for a rehearing on behalf of himself and 133 others named in the proceeding, was estopped from applying for a rehearing for the reason that he was a witness at the original hearing on December 27. The record contains his name in the list of witnesses, but does not disclose whether he appeared voluntarily or in response to a subpoena, and does not contain any of his testimony. Whatever effect this appearance might have as a waiver of jurisdictional defects, we find no sufficient ground for saying that he was estopped from appealing to the discretionary power of the court for relief from the order made as the result of that hearing.

As the conclusion that the village is a riparian owner necessarily disposes of the present case, it is not necessary to consider other questions sought to be raised, although the evidence to the effect that the lake is of beneficial public use is doubtless sufficient to sustain the order of the district court if based solely upon that ground.

Order affirmed.

QUINN, J., took no part.