MOORE *v.* PROVOST.

1. QUIETING TITLE—PLEADING—RELIEF ASKED—TITLE TO OTHER LANDS.

On a bill to quiet title to a mill site and establish in plaintiff certain flowage rights and easements in other lands, where plaintiff was given substantially the relief prayed for in his bill, he is not legally interested in the disposal of the title to the lands under the mill pond, title to which he disclaimed.

2. DEEDS—RIPARIAN RIGHTS—DESCRIPTION—WATERS AND WATERCOURSES.

Deeds conveying to defendants land described as "running to the bank or to a stake on the bank of the river," *held*, to justify the conclusion of the chancellor that such descriptions would extend the land conveyed to the thread of the stream.[1]

3. PLEADING—AMENDMENT—FOREIGN ISSUES.

The question as to whose duty it was to maintain a bridge over the race being a question foreign to the purposes of plaintiff's bill, the chancellor was in error in permitting an amendment to the bill to include said issue.

4. SAME—AMENDMENT—FAILURE TO AMEND.

Where an amendment to a bill, though asked for and granted, was never actually made, the question raised by the amendment will not be considered by the Supreme Court; the general rule being that nothing can be claimed for an amendment which is never actually incorporated into the pleadings.

Appeal from Shiawassee; Miner, J. Submitted February 5, 1919. (Docket No. 71.) Decided May 29, 1919.

Bill by J. Martin Moore against T. J. Provost and others to quiet title to land. From the decree rendered, plaintiff appeals. Affirmed in part, and reversed in part.

[1]See note in 42 L. R. A. 505.

*Hawley & Eldred,* for plaintiff.

*Albert L. Chandler* and *Van R. Pond,* for defendants.

BIRD, C. J. Plaintiff filed his bill in the Shiawassee circuit court to quiet title in himself in and to certain mill property situate on the east branch of the Shiawassee river, in the village of Byron. In the bill he claims title in fee to 4.43 acres of land, upon which is located a grist and carding mill, a dam and mill race; he also claims certain flowage rights and certain easements in other lands on sections 13, 23 and 24, in the township of Burns, in which said mill property is situated. A large number of persons, including the owners of land contiguous to the mill pond, were made parties defendant.

Answers were filed by nearly all of the defendants and the matter went to a hearing. Before the hearing had proceeded very far the parties found their differences so few that the trial court made a decree which was concurred in by counsel, giving to plaintiff substantially the relief prayed for in his bill. The decree quieted plaintiff's title to the 4.43 acres of land. It established plaintiff's right to flow certain lands described in the bill and fixed a permanent head of water which he was entitled to maintain. It also fixed the title to lands under the mill pond in the defendants owning premises abutting on the pond on sections 13 and 24 of the township of Burns, and it further provided that their respective premises extended to the thread of the stream of the Shiawassee river. Before the matter was finally disposed of and before the decree was signed counsel for defendant township of Burns asked permission to put in some testimony bearing on the question of whose duty it was to construct the bridge over the mill race. This was objected to by plaintiff's counsel because it was imma-

terial and because the pleadings raised no such question. An amendment of the answer of the township, making this question a part of the pleadings, was asked for and granted, after which the court announced that he would admit the testimony. The parties not having their witnesses in court the chancellor announced that he would sign the decree and reserve that question for future proofs. Following this certain corrections were made in the decree and new counsel came into the case. Then a rehearing was asked for. This the court denied except upon two questions:

(1) The question of the ownership of the land under the mill pond.

(2) As to whether the bridge in question shall thereafter be erected, maintained and repaired at the expense of said plaintiff, or of said township of Burns.

Later the parties went to a hearing on these two issues and a large amount of record and oral testimony was taken. This hearing resulted in a decree affirming the former decree as to the title of the land under the mill pond. In addition it placed upon plaintiff the duty of erecting, maintaining and repairing the bridge over the mill race. Upon both of these propositions the plaintiff has appealed.

1. In this court plaintiff's counsel argue in an extended brief that defendants have no title to the lands under the mill pond. They argue that the title thereto was reserved by plaintiff's grantors, and, inferentially at least, argue that plaintiff has the title. Counsel for defendants combat this argument at some length in their brief. Counsel for plaintiff then file a reply brief in which they say, in substance, that plaintiff does not now, and never has claimed the title to the land under the mill pond. Plaintiff's reason for appealing on this question is stated by counsel to be that—

"at some future time plaintiff may wish to acquire the title to this land covered by the pond. Accordingly, it is of interest to him not to have such title decreed to persons, who neither possess nor are shown to possess any title therein."

Defendants' counsel follow with a reply brief in which they proceed to prove that plaintiff's counsel are in error in stating that plaintiff has never claimed title to the land under the mill pond. We are unable to see the propriety of taking the time of this court with complicated matters over which there is no substantial disagreement. Plaintiff's attitude appears to be: "I do not claim title to the land under the mill pond but the court has decreed title to the same to certain contiguous land holders, and I prefer to have that question left open because I may in the future want to purchase it myself." Plaintiff's flowage rights are fixed by the decree and are alike secure whether the present defendants or others are declared to be the owners thereof. We are unable to see how plaintiff is legally interested in this question inasmuch as he does not claim the title. But aside from this consideration we are disposed to the view that the chancellor reached the right conclusion in holding that certain of the defendants had title to the land under the mill pond. In some of the conveyances to the defendants the tracts are described as "running to the bank or to a stake on the bank of the river." The holding of this court in *Hartz* v. *Railway*, 153 Mich. 337, justifies the conclusion of the chancellor that such a description would extend the land conveyed to the thread of the stream. The decree as to this question will not be disturbed.

2. Counsel for plaintiff objected to the testimony offered by the township of Burns, bearing on the question as to whose duty it was to construct, maintain and repair the bridge over the race, and afterwards they moved to strike the testimony out because incompetent and immaterial to this controversy. Ob-

jection was made to the allowance of the amendment for the same reasons. The bill in this case was filed by plaintiff for the specific purpose of having his title quieted to certain mill property, and having certain flowage rights and easements determined. These questions in no way involved the bridge over the race, or whose legal duty it was to construct and maintain it. Whether plaintiff or some other persons owned the premises the respective duties of the township and owners would be the same. So far as the record shows there was no existing controversy over the bridge or its construction or its repair. It was a controversy foreign to the purposes of plaintiff's bill and the chancellor should not have permitted it to be engrafted onto the controversy by amendment. Defendant, in justification of the amendment, says that the parties were all before the court. It is true the parties were before the court but that does not prove that the bridge question was germane to the controversy raised by the bill. If it were not it ought not to have been litigated in this suit. See *Thomas* v. *Nicolls,* 191 Mich. 489.

Another reason, although a technical one, suggests itself why we should not consider this question as properly in the case. The amendment asked for and granted was never actually made. The general rule is that nothing can be claimed for an amendment which is never actually incorporated into the pleadings. *Ballou* v. *Hill,* 23 Mich. 60; *Harris* v. *Thomas,* 140 Mich. 462; *Carroll* v. *Palmer Manfg. Co.,* 181 Mich. 280.

It is, therefore, our conclusion upon these two questions that the decree should be affirmed as to the first question, and reversed as to the second one. No costs will be allowed either party.

OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.