BAUMAN *v.* BARENDREGT.

1. BOUNDARIES—INLAND LAKES.
    Courses and distances in description in deed yield to natural and
      ascertained objects, like shore of lake.

2. WATERS AND WATERCOURSES—RIPARIAN RIGHTS IN INLAND WATERS.
    Titles and rights in inland waters, whether rivers, lakes, or ponds,
      and whether lakes are large or small, are governed by same
      rules of law, and titles to beds are in riparian owners.

3. SAME—IN ABSENCE OF RESERVATION RIPARIAN RIGHTS ATTACH.
    Where there is no reservation, riparian rights attach to lots
      bounded by natural watercourses.

4. DEEDS—QUITCLAIM—RIPARIAN RIGHTS.
    Quitclaim deed to plaintiffs, in 1919, of all land to north line of
      lake cannot affect construction of deed in 1893 to different
      grantee under whom defendant holds.

5. SAME—OWNER OF SHORE OWNS TO MIDDLE OF LAKE OR STREAM.
    Grant of land "along the shore of" natural watercourse carries
      title to middle of lake or stream.

6. FISH—RIGHT TO FISH IN INLAND LAKE.
    Each riparian owner has right to fish in any part of lake.

Appeal from Kent; Perkins (Willis B.), J. Submitted April 18, 1930. (Docket No. 8, Calendar No. 34,798.) Decided June 2, 1930.

Bill by Fred Bauman and another against G. Barendregt to enjoin boating and fishing on a certain lake. Cross-bill by defendant to enjoin interfering with his use of the lake. From a decree for defendant, plaintiffs appeal. Affirmed.

On right of riparian owner on tidal or navigable waters to exclusive fishery, see annotation in 60 L. R. A. 381; 31 L. R. A. (N. S.) 396.

On the question as to ownership of bed of lakes or ponds, see annotation in 42 L. R. A. (N. S.) 175; L. R. A. 1916C, 150.

*Norris, McPherson, Harrington & Waer,* for plaintiffs.

*Louis H. Grettenberger,* for defendant.

FEAD, J. This is a suit to restrain defendant from fishing and boating on Waldon lake in Kent county. Defendant claimed riparian rights, also title to a proportionate part of the bed of the lake, and had decree, affirming such title, on cross-bill.

Waldon lake is located wholly within the southwest quarter of section 5. In 1893, one Danforth owned all the land surrounding the lake, except at the extreme westerly end, and conveyed part of it to F. W. Wilbur under the following description:

"Beginning at the northwest corner of the east ¾ of southwest quarter of section 5, town 6 north, range 10 west; thence running south along the west line of said east ¾ of the southwest quarter 2,140 feet to the north side of the lake; thence north 85 degrees east along said lake 625 feet; thence north."

The Wilbur land is now divided among several owners, whose parcels front the lake, among them defendant, who purchased in 1926.

In 1898, Danforth's executors conveyed to one Wilder the whole property, except the piece as described in the deed to Wilbur, and another of no interest here. In 1913, Wilder conveyed to John Paul and wife, and in 1919 Mrs. Paul, as survivor, conveyed to plaintiffs by similar deed and also by quitclaim covering all land to the north line of the lake.

At the time of suit, the land on the west of the lake was owned by a stranger, defendant and three others owned substantially all the north shore, and plaintiffs the east and south shores.

Waldon lake is about 12 acres in extent, un-
meandered, 50 feet deep at maximum, is fed by
springs and an inlet creek carrying mostly surface
water and which goes dry during the summer. Its
outlet is School creek, which runs into Thornapple
river, where the latter is about 200 feet wide, and
which in turn empties into Grand river. The State
has often planted fish in School creek and they have
worked up into the lake. The creek and lake have
been very generally fished for many years by the
adjoining owners and general public. No objections
were made by plaintiffs until about two years ago.
The inlet to the lake is not navigable. The outlet
will float rowboats generally, with an occasional
push.

If distances in the description control, defendant's
title runs out into the lake. However, he does not
controvert plaintiffs' contention that courses and
distances yield to natural and ascertained objects,
like the shore of the lake. *Brown* v. *Milliman,* 119
Mich. 606; *Turner* v. *Angus,* 145 Mich. 679.

In this State, natural waters have been divided
into two classes, the Great Lakes and inland waters.
Titles and rights in the latter were early declared to
be governed by the same rules of law, whether they
were rivers, lakes, or ponds, and whether the lakes
were large or small. *Rice* v. *Ruddiman,* 10 Mich,
125; *Turner* v. *Holland,* 65 Mich. 453. They are
treated and designated generally as watercourses.
The titles to the beds are in the riparian owners.

It is a settled rule in this State that, where there
is no reservation of them, riparian rights attach to
lots bounded by natural watercourses. *Watson* v.
*Peters,* 26 Mich. 508; *Richardson* v. *Prentiss,* 48
Mich. 88; *Turner* v. *Holland, supra; Ice & Coal Co.*
v. *Ice & Coal Co.,* 102 Mich. 227 (25 L. R. A. 815, 47

Am. St. Rep. 516). The deed to defendant carried no reservation nor indication that riparian rights did not pass under it. Whatever the purpose of the quitclaim deed from Paul to plaintiffs in 1919, it cannot affect the construction of the deed of 1893 to a different grantee under whom defendant holds.

A grant of land "along the shore of," or by equivalent words or other description, bounded by a natural watercourse carries title to the middle line of the lake or stream. *Hartz* v. *Railway,* 153 Mich. 337; *Ice & Coal Co.* v. *Ice & Coal Co., supra; Moore* v. *Provost,* 205 Mich. 687. The *Ice & Coal Case* involved an inland lake, and *Moore* v. *Provost,* a river. The *Hartz Case* involved a millpond, formed by damming a river. The deeds describe the lands as running "along the bank of said millpond" and "southerly along the edge of said millpond." It. was held the grantee took title to the middle of the original stream. See, also, the exhaustive discussion in *Gouverneur* v. *National Ice Co.,* 134 N. Y. 355 (31 N. E. 865, 18 L. R. A. 695, 30 Am. St. Rep. 669); *Providence Forge Fishing & Hunting Club* v. *Miller Manfg. Co.,* 117 Va. 129 (83 S. E. 1047); *Tucker* v. *Mortenson,* 126 Minn. 214 (148 N. W. 60); and *Hardin* v. *Jordan,* 140 U. S. 371 (11 Sup. Ct. 808), in which, at page 391, the court said:

"When land is bounded by a lake or pond, the water, equally as in the case of a river, is appurtenant to it; it constitutes one of the advantages of its situation, and a material part of its value, and enters largely into the consideration for acquiring it. Hence the presumption is that a grant of land thus bounded is intended to include the contiguous land covered by water. Besides, a lake or pond, like a river, is a concrete object, a unit, and when named as a boundary, the natural inference is that

the middle line of it is intended, that is, the line equidistant from the land on either side."

Each riparian owner has the right to fish in any part of the lake. *Manney* v. *Prouse*, 248 Mich. 655.

Defendant's title extends into the bed of the lake, and the decree is affirmed, with costs.

WIEST, C. J., and BUTZEL, CLARK, MCDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.