RICE *v.* NAIMISH.

1. WATERS AND WATER COURSES—LITTORAL RIGHTS.
   Land must touch the water of a lake to carry littoral rights.

2. SAME—LITTORAL OWNER—LITTORAL RIGHTS.
   A littoral owner is one whose land is on the shores of a lake, and littoral rights are those which such an owner has to the use of the lake.

3. SAME—INLAND LAKE—LITTORAL RIGHTS.
   A littoral owner has the right to use his upland property to gain access to inland lake waters, to put out in a boat or on foot from his upland property where it touches the lake waters, to go boating, swimming, water skiing, fishing, ice skating or sledding, or to engage in other aquatic sports, in or upon the lake waters, and to use the entire surface and subsurface lake waters for such purposes.

4. SAME—INLAND LAKE—LITTORAL OWNERS—RIGHT TO USE WHOLE SURFACE.
   Each littoral owner shares littoral rights with all other littoral owners and none may interfere unreasonably with like rights of the others.

5. SAME—LITTORAL RIGHTS—TITLE.
   Owner of land bounded by a small inland lake, not navigable in any important commercial sense, holds title to the center of the lake bed.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur, Waters §§ 273, 277.
[2-9, 12] 56 Am Jur, Waters §§ 273, 274 *et seq.*
[10, 11] 5 Am Jur 2d, Appeal and Error § 822.
[13] 56 Am Jur 2d, Waters § 290.
[14] 5 Am Jur 2d, Appeal and Error § 1024.
[15] 20 Am Jur 2d, Costs § 37 *et seq.*

6. SAME—INTERFERENCE WITH LITTORAL RIGHTS.
   A littoral owner has the right to prevent construction of a
   fence which interferes with his littoral rights, or to demolish
   it during construction or afterward without permission of a
   court.

7. SAME—FENCE ON PROPERTY—LITTORAL RIGHTS.
   A barrier on one littoral owner's property which bars an-
   other littoral owner's way to deeper waters violates the latter's
   littoral rights.

8. SAME—NORMAL CONDITION OF WATERS DETERMINES LITTORAL
   RIGHTS.
   Existence or nonexistence of littoral rights is to be determined
   with the lake waters in their usual and normal condition.

9. SAME—LITTORAL RIGHTS—TEMPORARY DEPARTURE FROM NORMAL
   CONDITION.
   A temporary departure from the normal condition of a lake
   does not alter the littoral character of lands or the littoral
   rights of landowners.

10. APPEAL AND ERROR—CHANCERY CASES—REVIEW.
    Review of a chancery case is *de novo* on the record.

11. SAME—CHANCERY CASES—FINDINGS OF TRIAL COURT.
    Court on appeal gives considerable weight to the findings of
    the trial court in equity cases.

12. WATERS AND WATER COURSES—FENCE—LITTORAL RIGHTS.
    Whether defendants' land was touching inland lake waters when
    plaintiffs' fence was being built is immaterial if the fence
    would interfere with the defendants' littoral rights with the
    lake in its usual, ordinary, and natural condition.

13. SAME—EVIDENCE—BURDEN OF PROOF—NORMAL LEVEL OF LAKE.
    Plaintiffs have the burden of proving the normal level of
    a lake to be less than the level uniformly determined by the
    court in 3 prior suits, which the plaintiffs or one of them were
    parties.

14. COSTS—VEXATIOUS APPEAL.
    Dearth of clear-cut Michigan authority regarding the effect of a
    temporary recession of lake waters upon the rights of littoral
    owners leads Court of Appeals not to impose costs for vexa-
    tious appeal, where the issue appealed is essentially the same
    as plaintiffs presented unsuccessfully in 3 prior actions.

15. Same—Security—Repetitious Action.

    Appellate court recommends that if plaintiffs start another action in which they assert that lake should be at a different level than that established in prior litigation, after losing in 4 successive actions in which their basic assertion was that lake level should be lower than that level uniformly determined by trial court and affirmed in the actions which were appealed, the trial court should consider requiring them to post security for costs, including the actual costs of preparation and trial, and a reasonable attorney fee (GCR 1963, 109).

Appeal from Oakland; Adams (Clark J.), J. Submitted Division 2 June 7, 1967, at Lansing. (Docket No. 2,893.) Decided December 4, 1967. Rehearing denied January 16, 1968. Leave to appeal denied March 22, 1968. See 380 Mich 763.

Complaint by Norman Rice and Muriel Rice against John G. Naimish and Madelon Naimish to enjoin defendants from entering upon or trespassing upon plaintiffs' land. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Robert M. Myers,* for plaintiffs.

*Clarence L. Smith,* for defendants.

Baum, J. Stripped of frivolous issues, this is a dispute between neighbors over the level of Duck lake in Oakland county. The parties to the instant suit own adjoining lands. Plaintiffs' property lies to the south of defendants' property.

If the normal level of Duck lake is 1,014.63 feet[1] above sea level, or less, as claimed by the plaintiffs, the northernmost lake waters would not touch the defendants' land in the area known as the bay, and consequently the defendants would have no littoral

---

[1] In all instances, lake level references are to the number of feet above mean sea level as measured by the United States Geological Survey.

rights[2] in this area. However, if the normal height of the lake is 1,016.63 feet as contended by the defendants, the waters of Duck lake would touch defendants' land in the bay area, rendering those lands littoral in character.[3]

A rough diagram of the land holdings of the parties may contribute to the reader's understanding of this case.

The trial judge found that a fence which the plaintiffs were in the process of erecting on their own land would have interfered with the defendants' riparian rights. As shown in the diagram, this fence was to run in an easterly direction through the bay area. The trial court concluded that defendant John Naimish was justified in pulling up the posts of this fence. Plaintiffs challenge this ruling on appeal.

In addition to plaintiffs' allegations that the defendants destroyed the fence under construction, the plaintiffs made the following allegations against the defendants:

That the defendants destroyed portions of an old boundary line fence, which had become, through mutual acquiescence, the lawful boundary;

That the defendants moved and relocated fence posts of the old boundary line fence to the south of their proper position;

That the defendants cut down a large willow tree, 3 feet in diameter, which stood partly on the plaintiffs' land;

That the defendants removed other trees and other vegetation from the plaintiffs' property;

---

2 Sometimes the words "riparian proprietor" are applied to ownership of the shores of a lake or on the shores of a sea. Precise scholars, however, admonish us that "riparian" is a word more accurately used in connection with rivers and streams while the term "littoral" is appropriate in connection with lakes, seas and oceans. 56 Am Jur, Waters, § 273, p 726.

3 To carry riparian or littoral rights the land must touch the water. *Monroe Carp Pond Co.* v. *River Raisin Paper Co.* (1927), 240 Mich 279, 287.

SHORELINE OF BAY AREA AT DUCK LAKE

APPROXIMATELY AS FOUND BY TRIAL JUDGE WITH

LAKE LEVEL AT 1016.63 FEET ABOVE MEAN SEA LEVEL, U.S.G.S.

Section 14
Rice Property

Common Section Line

Section 11    Naimish Property

New Fence Under
Construction

36 Inch
Willow Tree

Old Boundary
Line Fence

Shoreline

Section 14
Rice Property

Duck Lake

That the defendants dug out and lowered land near the mutual boundary line in the bay area in order to cause the lake to reach the defendants' property.

The trial judge found against the plaintiffs on each of these allegations, and his findings are well supported by the evidence. We affirm such findings without further discussion.

We return now to the issue concerning the fence, the lake level and the littoral rights of the defendants. Among the rights of a littoral owner is the right to use his upland property to gain access to the lake waters; the right to put out in a boat or on foot from his upland property where it touches the lake waters; the right, after so embarking, to go boating, swimming, water skiing, fishing, ice skating or sledding or to engage in other aquatic sports, in or upon the lake waters; and the right to use the entire surface and subsurface lake waters for such purposes. *Burt* v. *Munger* (1946), 314 Mich 659; *Manney* v. *Prouse* (1929), 248 Mich 655; *Kerley* v. *Wolfe* (1957), 349 Mich 350. Each littoral owner shares such rights with all other littoral owners and none may interfere, unreasonably, with like rights of the others. *Beach* v. *Hayner* (1919), 207 Mich 93.

In a small inland lake, like this one, which is not navigable in any important commercial sense, the owner of uplands holds title to the submerged extension thereof to the center of the lake bed, apportioned, with other littoral owners, where indicated by the configuration of the lake and abutting land parcels. *Ottawa Shores Home Owners Association, Inc.,* v. *Lechlak* (1955), 344 Mich 366; *Bauman* v. *Barendregt* (1930), 251 Mich 67; *Moore* v. *Provost* (1919), 205 Mich 687.[4]

---

[4] There is an exception when such a state of title is precluded by the language of the grant in the littoral owner's chain of title.

On the facts in this case, it is clear that the plaintiffs' fence was being constructed upon lands owned by them whether or not such lands were submerged. *Ottawa Shores Home Owners Association, Inc.,* v. *Lechlak, supra.*

Nevertheless, if the defendants' lands in the bay area were littoral, and the plaintiffs' projected fence interfered with the defendants' exercise of any of the previously described littoral rights, the defendants would be privileged to prevent construction of the fence or to demolish it during construction or thereafter, and the defendants would not need permission of a court to do so. *Manney* v. *Prouse, supra.*

With the lake level at 1,016.63 feet the defendants would be able to enter the lake from their own uplands in the bay area, but the way to deeper waters would be barred by the Rices' new fence. Such a barrier, even though it was on the Rices' own property, would violate the Naimishes' littoral rights. *Kerley* v. *Wolfe, supra.*

On four separate occasions in the recent past, of which this is the latest, courts of competent jurisdiction have held that the usual, normal, and lawful level of Duck lake is 1,016.63 feet. These determinations were all made in cases in which one or both of the plaintiffs were parties.

The first such determination was made by the Oakland circuit court in a case (No. C27821) brought by the Naimishes against Norman Rice and his vendor under land contract. The circuit court held, *inter alia,* that, with the lake at 1,016.63 feet, the Naimishes had riparian rights in the bay area. The trial court's decision was affirmed by the Supreme Court, *Naimish* v. *Wardlow* (1961), 362 Mich 198, and Norman Rice's motion for rehearing was denied by the Supreme Court on February 28, 1961.

Three months later, Muriel Rice brought a mandamus action in Oakland circuit court (No. L52373) to compel the Oakland county drain commissioner to lower the level of Duck lake to 1,013.56 feet. Norman Rice was added as a party and he adopted the position of his plaintiff wife. In July of 1962, the circuit court denied the Rices' mandamus petition on the ground that it was bound by the lake level determination which earlier had been made by the circuit court and affirmed by the Supreme Court. No appeal was taken.

In still another suit (No. L54394) the Oakland county board of supervisors sought a judicial determination of the lawful level of Duck lake. The Rices and John Naimish appeared and participated in this lawsuit. Ultimately, after contested hearings, this case was disposed of by an order on June 18, 1962, which established the normal and lawful elevation of Duck lake at 1,016.63 feet. No appeal was taken.

Under these circumstances, the trial judge was correct in placing upon the plaintiffs the burden of proving any lake level less than 1,016.63 feet.

Further, the trial judge was correct in the legal conclusion, implicit in his decision, that the existence or nonexistence of littoral rights is to be determined with the lake waters in their usual and normal condition. A temporary departure from this condition does not alter the littoral character of lands or the littoral rights of owners of such lands. *Troska* v. *Brecht* (1918), 140 Minn 233 (167 NW 1042); *Tucker* v. *Mortenson* (1914), 126 Minn 214 (148 NW 60). Also, see *Kerley* v. *Wolfe, supra; Burt* v. *Munger* (1946), 314 Mich 659; and *Ruggles* v. *Dandison* (1938), 284 Mich 338, suggesting that it is the natural and normal, rather than any temporary, condi-

tion of a lake, which determines the littoral char-
acter of land.

We are reviewing a chancery case. We do so
*de novo* on the record, giving considerable weight
to the findings of the trial court. *Christine Building
Company* v. *City of Troy* (1962), 367 Mich 508. The
record is replete with evidence showing that the
level of Duck lake is subject to temporary fluctua-
tions depending upon the degree of precipitation.
The evidence clearly demonstrates that the usual,
natural, ordinary, and normal level of the lake is
1,016.63 feet. The record is uncontradicted that the
lake temporarily falls below this level in periods of
unusual drought, but returns to the height of 1,016.63
feet in periods of normal precipitation. Similarly
the evidence shows that the lake is higher than
1,016.63 feet in periods of abnormally heavy pre-
cipitation, but returns to this level in periods when
precipitation is normal. The record is virtually de-
void of evidence of any permanent dropping of the
lake level below 1,016.63 feet.

There is an issue of fact as to whether the waters
of Duck lake touched the defendants' land in the
bay area at the time when plaintiffs' fence was being
built. Evidently the trial judge believed that they
did. Whether he was correct in his belief is im-
material, because the fence would interfere with the
Naimishes' littoral rights with the lake in its usual,
ordinary, and natural condition.

In summary, with the lake level at 1,016.63 feet,
the waters of Duck lake touch the defendants' land
in the bay area. After the plaintiffs lost a series
of lawsuits which established the level of Duck lake
at 1,016.63 feet, it was incumbent upon them to prove
that the high and dry nature of the Naimishes' bay
area lands was more than a temporary, fleeting
condition. This they clearly failed to do. Much

to the contrary, the evidence demonstrates that if the lake level was below 1,016.63 feet at the time of the Rices' fence project, its restoration to that level was, in all probability, imminent and inevitable. Thus, the fence under construction offended the Naimishes' littoral rights and the trial judge properly found that John Naimish was privileged to destroy it.

This is the fourth full dress lawsuit in recent years over the level of Duck lake. There have been at least as many summary proceedings ancillary to the plenary lawsuits. The Rices have lost all of the legal battles to date. This should be the last in the series.

In one of the many legal skirmishes, Norman Rice was adjudged in contempt of a permanent injunction which restrained him from filling in lake waters near the Naimishes' lands. Even this did not stop the Rices from waging their legal wars over the lake level. Seemingly, the Rices cannot accept defeat. One of the reasons is not hard to find. With the lake at 1,016.63 feet the bay extends north over the Rices' property onto the Naimish tract, dividing the Rices' property into two parcels. The Rices have tried to unite the divided parcels by building a road or causeway through the bay area. In periods of drought, they have tried to raise their lands in the bay area so high that Duck lake waters would never again lap over upon the Naimishes' property. Uniting the parcels separated by the bay seems to have become an obsession with the Rices. The Naimishes, on the other hand, are equally determined not to lose their bay area littoral rights. They have had to defend these rights time and again. Each time the Naimishes have prevailed. Four times is more than enough.

Should the Rices attempt for a fifth time to litigate the lake level, we commend to the trial court's

consideration a requirement that the Rices post security for costs, including the actual costs of preparation and trial, together with actual attorney's fees not to exceed a reasonable amount, GCR 1963, 109.

We have considered imposing costs for vexatious appeal, but have not done so, because there is a dearth of clear-cut Michigan authority regarding the effect of a temporary recession of lake waters upon the rights of littoral owners.

Affirmed, with costs to the appellees.

LESINSKI, C. J., and QUINN, J., concurred.