IN RE ESTABLISHMENT AND CONSTRUCTION OF COUNTY DITCH NO. 63, SIBLEY COUNTY.
JOSEPH A. HERSCHMAN AND OTHERS v. STATE, DEPARTMENT OF NATURAL RESOURCES.

225 N. W. 2d 841.

January 31, 1975—No. 44812.

*Young & Moriarty* and *Patrick Moriarty,* for appellant.

*Warren Spannaus,* Attorney General, *C. Paul Faraci,* Deputy Attorney General, *Peter W. Sipkins,* Solicitor General, and *William G. Peterson,* Special Assistant Attorney General, for respondent.

Heard before Otis, Rogosheske, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from an order of the district court vacating an order of the Sibley County Board of County Commissioners which authorized the establishment of Sibley County Ditch No. 63, primarily to lower the water level of Swan Lake. The court concluded that inasmuch as Swan Lake is a meandered lake within the meaning of Minn. St. 1971, § 106.021, subd. 2, a permit is required from the commissioner of natural resources before said lake can be lowered. As no permit was issued, the court held that the county board was without jurisdiction to order drainage. A landowner whose property adjoins the lake filed a notice of appeal. We affirm.

Appellant and other landowners filed a petition with the county auditor for the establishment of a public ditch to lower the water level of Swan Lake in Sibley County. It is undisputed that Swan Lake was meandered by government surveyors and consisted of over 800 acres within the meandered line. Some 70 years ago most of its water disappeared, and an action was instituted in Sibley County to partition and subdivide the dry lake bottom. The court found that the lake was a meandered lake which had imperceptibly dried up. The lake bed was therefore subdivided

among the various adjoining landowners. Scheifert v. Briegel, 90 Minn. 125, 96 N. W. 44 (1903). The state was not a party to this action.

In 1942, a predecessor in title to one of the petitioners in this action commenced an action to register title to a portion of the lake bottom land and adjoining lands under the Torrens system. A certificate of title registration was issued. The state was a party to this proceeding.

There is evidence of alternate recession and refilling of the waters of Swan Lake in subsequent periods of time since that registration. The lake is presently at normal depth, covering much of the land that was assigned to adjoining owners, including the land to which title was registered.

Minn. St. 1971, § 106.021, provides in pertinent part:

"Subd. 2. The board or court is authorized to drain in whole or in part lakes which have become normally shallow and of a marshy character and are not of sufficient depth or volume to be of any substantial public use; provided no meandered lake shall be so drained except upon the determination of the commissioner of natural resources of the state of Minnesota that such lake is not public waters, or pursuant to the permit of the commissioner as provided in subdivision 3.

\* \* \* \* \*

"Subd. 4. The petitioners for any public ditch, or the board or court may make application to the commissioner of natural resources for the authority required by subdivision 3 or for the determination of the status of meandered lakes required by subdivision 2." [1]

The court found, in part:

"3. That since no permit has been issued by the Commissioner of Natural Resources, pursuant to that statute, Minn.

---

[1] L. 1973, c. 479, §§ 5 and 6, amended Minn. St. 1971, § 106.021, subds. 2 and 4, to the extent that the phrase "meandered lakes" has been eliminated and the relevant phrase is now "lakes basins or natural watercourses."

Stat. § 106.021, subd. 2, regarding the drainage or lowering of Swan Lake, and no determination has been made by the Commissioner of Natural Resources that Swan Lake is not public waters, the County Board of Sibley County has no jurisdiction to order the lowering of Swan Lake."

The primary issue for our resolution must therefore be whether Swan Lake is a meandered lake within the meaning of § 106.021, subd. 2. Such a finding is necessitated in that the statute provides that no meandered lake shall be drained except upon permit or determination of the commissioner of natural resources, neither of which was obtained here.

Appellant initially contends that the particular use of the lake-bed, as well as its continuing dry condition for many of the past 70 years, warrants the conclusion that Swan Lake has lost its "meandered lake" status and is therefore not governed by the requirements of § 106.021.

In Troska v. Brecht, 140 Minn. 233, 239, 167 N. W. 1042, 1044 (1918), this court stated in language particularly relevant here:

"The petitioners claim that Minnesota lake, although meandered by the government surveyors, ceased to be a meandered lake for the reason that it dried up during the unusually dry seasons prior to 1900. But the lake again filled up from natural causes in 1902, and has remained substantially in its original condition ever since. *The lake did not lose its character as a meandered lake by a mere temporary recession of its waters; to have that effect the recession must be permanent.* Anderson v. Ray, 37 S. D. 17, 156 N. W. 591; State v. Thompson, 134 Iowa 25, 1̄1̄1̄ N. W. 328." (Italics supplied.)

Such reasoning was strongly reaffirmed in State v. Longyear Holding Co. 224 Minn. 451, 468, 29 N. W. 2d 657, 667 (1947), certiorari denied, 336 U. S. 948, 69 S. Ct. 884, 93 L. ed. 1104 (1949). See, also, In re Lake Elysian High-Water Level, 208 Minn. 158, 293 N. W. 140 (1940).

Despite substantial evidence that the lake was completely dry for considerable periods of time, the mere fact that the lake has refilled during several consecutive years and has water today is conclusive that the recession was not of a permanent nature. We therefore must conclude that Swan Lake has not lost its "meandered lake" status, and that any proceeding to drain this body of water must occur only after compliance with the requirements of § 106.021.

Appellant then contends that registration of title to a portion of the lakebed constitutes sufficient action to remove Swan Lake from the control of the state as public waters. However, the conclusion necessitated here is that the title registration, though determinative of legal ownership, has no preemptive effect upon the exercise of the state's police power. There is no authority to support the theory that the state surrenders its right to exercise its police power over meandered lakes by the registration of title to land now beneath an existing lake. This court said in State v. Adams, 251 Minn. 521, 546, 89 N. W. 2d 661, 678 (1957), certiorari denied, 358 U. S. 826, 79 S. Ct. 45, 3 L. ed. 2d 67 (1958) : "The ownership of beds of streams and lakes is quite a different matter from the right to control waters." The regulation of waters of the state is within the police power, and the exercise thereof rests exclusively with the legislature, limited only by constitutional restraints. Its jurisdiction cannot be surrendered, and it is not subject to estoppel. Therefore, logically we can hold only that the title registration involved in this case is in no way determinative of the state's right to regulate its waters.

Appellant finally asserts that there is no evidence of any public use of Swan Lake so as to bring it within the definition of "public waters" set forth in Minn. St. 1971, § 105.38(1). Therefore, he contends, assuming Swan Lake has lost its meandered status, it is not a lake devoted to substantial public use and petitioners need not comply with § 106.021. It is unnecessary for this court to reach this issue, as we have held that Swan Lake is a

meandered lake. Whether it is to be defined as public waters is therefore properly to be considered by the commissioner of natural resources pursuant to an application made under § 106.-021 for this finding or for a permit allowing construction of the ditch.

The trial court correctly outlined the procedure and its ramifications in its memorandum, stating:

"The landowners adjoining the lake and petitioners in the proceeding before the County Board may still be able to accomplish the purpose of the ditch proceedings by applying for a permit. If that is refused, some means of review of such denial no doubt will be afforded by certiorari if appeal is not provided. Reasonable judgment should make further review unnecessary."

We therefore affirm the findings and order of the lower court which mandate full compliance with § 106.021.

Affirmed.

MR. JUSTICE KELLY took no part in the consideration or decision of this case.