BAUERLE *v.* CHARLEVOIX COUNTY BOARD
OF ROAD COMMISSIONERS

1. HIGHWAYS—ROAD EXTENSION—POND FILL.

A county road commission cannot extend an existing road by filling in an inland pond over the objections of the owners of the land adjacent to the pond without due compensation unless it is shown that a road has been established over the pond by statutory dedication, acceptance, use for the statutory period, and expenditure of public funds, where any use of the pond or of the land near the pond was done with the owners' consent.

2. HIGHWAYS—ROAD EXTENSION—POND FILL.

A county road commission's filling a pond to extend a public road necessitated compensation, because the commission had no title to the pond where the evidence indicates that the road commission merely described the road as existing over the pond by resolution, that the pond's depth prevented crossing except by boat, that it was impossible to cross the pond by car even when frozen, and that any travel by the public was on the land south of the pond, was rare, and was with permission of the adjacent landowners.

3. HIGHWAYS—POND FILL—RIGHT TO COMPENSATION.

County road commissioners' filling an inland pond in order to extend an existing road constituted a taking of property of riparian right holders without due process of law and without just compensation where no public road existed over the pond.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 26 Am Jur 2d, Eminent Domain § 191 *et seq.*
[5] 56 Am Jur, Waters § 277 *et seq.*
[6] 56 Am Jur, Waters § 360 *et seq.*
[7] 56 Am Jur, Waters § 179 *et seq.*
[8] 56 Am Jur, Waters § 321 *et seq.*

4. PROPERTY—RIPARIAN RIGHTS—INLAND LAKE OR POND—SUBAQUE-
OUS LAND—OWNERSHIP.

The owners of the fee of land completely surrounding an inland
lake or pond own the land under the water.

5. EQUITY—RIPARIAN RIGHTS—TRESPASS—QUIET TITLE.

The owner of land adjacent to a pond although not in actual
physical possession of the soil of the pond, may maintain a
suit in equity to enjoin trespass and quiet title; he is not
restricted to an action for ejectment.

6. EQUITY—RIPARIAN RIGHTS—INJUNCTIVE RELIEF.

Riparian rights may be protected by an injunction; relief may
be had for obstruction of water rights, trespass on water rights,
and the pollution of a watercourse.

7. WATERS AND WATERCOURSES—LAKES—NAVIGABILITY.

A lake or stream is navigable as a matter of law if it is navigable
in fact.

8. EQUITY—COUNTIES—ROAD COMMISSION—SOVEREIGN IMMUNITY—
RIPARIAN RIGHTS.

A county board of road commissioners was not protected from
appropriate injunctive relief by the doctrine of sovereign im-
munity where it had wrongfully interfered with the riparian
rights of landowners adjacent to an inland pond by filling
in the pond to extend an existing road without legal right.

Appeal from Charlevoix, Charles L. Brown, J.
Submitted Division 3 April 2, 1971, at Grand Rapids.
(Docket No. 10154.) Decided June 23, 1971. Leave
to appeal granted, 387 Mich 759. See also 386 Mich
764.

Complaint by William Bauerle and Lorraine
Bauerle against the Charlevoix County Board of
Road Commissioners for removal of fill and debris
from a pond, for restoration of possession of land
and riparian rights, and for an injunction against
further trespass, and against Joseph Hoffman and
Ruth Hoffman for an injunction against interference
with removal of fill and debris. Judgment for plain-
tiffs. Defendant board of road commissioners ap-
peals. Affirmed.

*Washburne & Litzenburger,* for plaintiffs.

*Conkle & Varnum,* for defendant Charlevoix County Board of Road Commissioners.

Before: HOLBROOK, P. J., and BRONSON and O'HARA,[*] JJ.

O'HARA, J. In certain instances an appellate court, limited as it is by a cold record and opposing briefs, can not possibly get the "feel" of a given matter litigious anywhere near as well as the chancellor on the scene, and who in the words of the late great musical, "The Music Man", "knows the territory".

This is such a case. The long-time experienced circuit judge made precise and detailed findings of fact. Additionally, he properly, together with the parties, "viewed the premises".[1] He analyzed carefully the issues, and buttressed his conclusions with relevant case precedent. He invoked his salutary and plenary powers as a chancellor where necessary.

We would do no service to the trial bench, the bar, or the parties to recast his opinion in our own appellate phraseology. We can do no better.

We adopt his opinion, supplemental opinion and order as our own and set them forth verbatim.

### *"Decision of the Court*

"This court finds the facts as stated in plaintiffs' brief, to wit:

"Plaintiffs brought this action to require defendant road commission to remove all fill and debris

---

[*] Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Some of my erstwhile colleagues on the Supreme Court bench will recognize the author of the quotation.

placed in a pond which is bisected by the north section line of Section 34 in Bay Township, and which lies east of the former end of Reycraft Road and the shore of Walloon Lake, to restore them to possession of all their lands and their riparian rights in the pond waters, to permanently enjoin further trespass, for a finding that defendant road commission's claim of right to extend said road is without merit, to require defendant Hoffman to not interfere with the removal of said fill which lies upon their portion of the submerged lands of the pond lying northerly of said section line and to be afforded generally that relief contemplated by Section 2932 of the Revised Judicature Act, being MSA § 27A.2932 or MCLA § 600.2932.

"Defendants Hoffman, by their attorney, Robert Hoffman, prior to the commencement of trial stipulated that should plaintiffs be successful in the action they would be bound by the court's decision and permit the removal of any fill lying on their submerged lands and to the pond's restoration.

"All of the testimony produced during the trial showed that Reycraft Road's easterly limit stopped short of the westerly edge of the aforesaid pond and that all witnesses agreed that the extent of the use easterly of Zenith Heights Road was a narrow, two-rut road bounded closely on both sides by heavy woods. While one witness for defendant road commission (Kritcher) said he thought someone may have crossed the ice on this pond to reach Walloon Lake, none of the defendant road commission's witnesses ever had and all agreed that the woods lying between the easterly edge of the pond and Walloon Lake, as evidenced by plaintiffs' exhibits taken prior to the construction, would have made this impossible. All witnesses produced by both sides also agreed that the pond's depth remained fairly constant and made any crossing except by boat impossible.

"Testimony was elicited by defendant over plaintiffs' objection that travel to Walloon Lake was accomplished by traversing the land to the south of the pond; however, these witnesses agreed that their use was with permission on the then owner of plaintiffs' lands. Testimony on behalf of plaintiffs (Bauerle and Wauters) showed that none has since traveled south of the pond for a period of at least 35 years during which time the lands had been fenced.

"Plaintiffs also testified that prior to the defendant road commission's filling of the pond, they and children from their camp made daily excursions onto the pond in canoes pursuing the camp's program of the study of pond life, and that they were able to navigate the entire pond surface.

"Defendant cannot make its 'fill' over the center line (even with consent of the owner of adjoining lands) and thus avoid liability, unless it has been shown a road has been established by dedication, acceptance, used for statutory period, and expenditure of public funds. There were tall trees at the east end of the pond extending to the shores of Walloon Lake, and the record fails to meet the necessary proof any road ever extended to the shores of Walloon Lake. It is certain the 'going around the pond at the East end of said road' was permissive and did not 'ripen into title' by such permissive use.

"Describing a road 4/10 miles in length from Walloon Lake west to the northwest corner of Section 34 by the resolution of the defendant (per requirements of the McNitt Act) does not establish any road as a matter of law.

"Action of the defendant amounted to a taking without due process and without compensation and plaintiffs are entitled to relief.

"Had condemnation proceedings been instituted, in the opinion of this court, necessity could probably have been shown for opening the road to Walloon Lake and compensation would have been awarded

to plaintiff for the taking. In any event the 'pond' would be 'divided' and approximately 33 feet of land south of the center line taken from plaintiffs, and condemnation proceedings could be instituted were this court to order removal of the fill.

"It is, therefore, suggested that efforts be made toward an amicable settlement of this controversy, taking into consideration the cost of removal of the fill; that plaintiffs may renew their request for damages (the prayer of the complaint asking for such other relief as a court may grant in the interest of justice, to avoid a multiplicity of suits, etc.) and that the *status quo* be maintained for at least 60 days and/or until the further order of this court pending such settlement attempts."

## *"Supplemental Decision of the Court*

"The October 10, 1969 decision of this court is incorporated herein and by this reference made a part hereof. By the aforesaid decision of October 10, 1969, this court (by last paragraph thereof) suggested serious attempts to effect an amicable settlement be made and that the *status quo* be maintained for at least 60 days and/or the further order of this court pending such settlement attempts. This court has since been advised that all settlement attempts have been unsuccessful and this court has recently personally viewed the premises, noticed the usual empty bottles, beer cans, wrapping papers and debris, observed that there is no 'turn around' provided and that one must 'back up' to the turn around at the entrance to the Hoffman property at the north.

"Plaintiffs, being owner in fee of all land bordering upon the lake or pond on the south side of the lake or pond it follows they own the lands under the waters thereof. See *St. Helen Shooting Club* v. *Mogle* (1926), 234 Mich 60.

"In *Pleasant Lake Hills Corporation* v. *Eppinger* (1926), 235 Mich 174, wherein defendant contended

plaintiff's proper remedy was by ejectment instead of trespass, the Supreme Court held that although plaintiff held record title to the land around and under the water of the lake or pond, it could not be said it had actual physical possession of the soil; but neither did the defendant, and held that the circuit court in chancery, under the provisions of CL 1915, § 12302(4) had jurisdiction 'To hear and determine suits instituted by any person claiming the legal or equitable title to lands, whether in possession or not, against any other person not in possession * * * and that plaintiff could maintain suit in equity to enjoin trespass and quiet title.'

"11 Callaghan's Michigan Pleading & Practice, Chapter 76, Injunctions, § 76.81, provides rights relating to water may be protected by means of injunction, including the obstruction of water rights, trespass on water rights and the pollution of a watercourse. See also *Eager* v. *State Highway Commissioner* (1965), 376 Mich 148; Const 1963, art 6, § 13; GCR 1963, 754.

"*Kerley* v. *Wolfe,* 349 Mich 350, decided in 1957, upholding trial court's finding that a fence erected by defendants prevented plaintiffs from exercising their riparian rights of boating and fishing, held plaintiff's action was not restricted to one of ejectment and that *Collins* v. *Gerhardt* (1926), 237 Mich 38, settled the question of navigability and status of lakes and streams in Michigan and that a part of a lake being navigable in fact, is navigable in law.

"Part of the pond or lake through which the disputed Reycraft Road now runs, was navigable in fact, as found in the *Collins* v. *Gerhardt* case, and was and is navigable in law. This court observed a 'springboard' at one end which was formerly used for diving; it never dried up winter or summer; it was and still is at least four feet in depth in some locations; it was and still is capable of supporting a canoe or rowboat, and plaintiffs' riparian rights

have been and are still being interfered with and they are entitled to relief. The waters are now becoming stagnant and mosquito-infected. Bullrushes or 'cattails' are now growing along the entire fill or causeway on the south (plaintiffs') side thereof; water lilies are starting to grow and there is evidence of it probably becoming a marsh as described in the testimony of Dr. Donald MacLachlan, Professor of Geology, who testified in *Kerley* v. *Wolfe, supra.* Swans formerly occupied the pond or lake but have long since departed and cease to use it. Although it may not appear in the record it was formerly a spawning bed for pike.

"Defendant's engineer, Mr. Fitzgerald, admitted he did not consult with counsel prior to filling in the causeway; 'we *assumed* we had an easement', 'it was a good way to dispose of stumps'; 'the main purpose of the stumps exposed in Defendant's photo, Exhibit 6, is to stabilize and form', 'there was a desire by the township board to open up the road to the lake (Walloon Lake) for the public'. He admitted he received a letter from plaintiffs asking not to make the fill. He also admitted that except for the fill no work or maintenance was performed on Reycraft Road easterly of Zenith Heights Road and that it was classified as an 'unimproved dirt road'.

"This court does not subscribe to the theory and old 'saying' that 'the King can do no wrong' and finds in the instant case defendants did wrong and that the wrong should be 'righted'; therefore, inasmuch as plaintiffs have convinced this court by the necessary preponderance of the evidence and requisite proofs they are entitled to relief an order may be presented to this court for signature requiring defendant Board of Road Commissioners of Charlevoix County to either remove the entire 'fill' or 'causeway' or make an 'opening' at least ten feet wide through the 'center' of the 'fill' or 'causeway' or its 'deepest point' nearest the center and install in

said 'opening' a galvanized circular tubing or pipe large enough to permit 'headroom' of at least eight feet above the surface of the water at both high and low water levels and at least ten feet in width after installation and of sufficient gauge or thickness and approved type materials to conform to and with approved engineering practices and requirements of the Michigan State Highway Department pertaining to highways, bridges, and culverts of the size above specified.

"Concrete or other engineering approved materials may be used to install the bridge or culvert provided such materials and construction of such bridge or culvert meet engineering specifications and requirements of the Michigan State Highway Department and the width and headroom above specified.

"All stumps, logs, and debris of all kinds are to be removed from the fill or causeway and from the road extending to Walloon Lake, including the 'fish shanties'.

"All bottles, empty cans, cartons, wrappers, and refuse of all kinds are to be removed at least once every two weeks and trash or refuse barrels provided near the shore of Walloon Lake.

"Care is to be used to insure that no obstruction is to be made or permitted of or to the small rivulet or 'runoff' at the northern side of the opening into Walloon Lake in order to facilitate and expedite return of the springs or original source of supply of the fresh water in the lake or pond in dispute and prevent further stagnation thereof.

"It is further ordered that the removal of the entire fill or causeway, or, in the alternative, construction of the ten-foot opening or bridge hereinbefore specified be satisfactorily performed and completed on or before November 15, 1970, at no expense to plaintiffs and that removal of the old 'fish shanty', bottles, empty cans, etc. and 'policing' of the dis-

puted area be done and performed within 15 days hereof.

"All defense motions, decisions on which were heretofore reserved, are denied.

"This court reserves the right to determine and assess costs and/or compensation in its discretion, pending compliance with this decision."

S/S Charles L. Brown,<br>Circuit Judge

### *"Judgment*

"The court, having heretofore made and filed its decision and supplemental decision in the above entitled action, together with an order for judgment in accordance therewith, and the court being fully informed in the premises,

"It is ordered and adjudged that the defendant Board of Road Commissioners of Charlevoix County either remove the entire 'fill' or 'causeway' or make an 'opening' at least ten (10) feet wide through the 'center' of the 'fill' or causeway or its 'deepest point' nearest the center and install in said 'opening' a galvanized circular tubing or pipe large enough to permit 'headroom' of at least eight (8) feet above the surface of the water at both high and low water levels and at least ten (10) feet in width after installation and of sufficient gauge or thickness and approved type materials to conform to and with approved engineering practices and requirements of the Michigan State Highway Department pertaining to highways, bridges, and culverts of the size above specified.

"It is further ordered and adjudged that concrete or other engineering approved materials may be used to install the bridge or culvert provided such materials and construction of such bridge or culvert meet engineering specifications and requirements of the Michigan State Highway Department and the width and headroom above specified.

"It is further ordered and adjudged that all stumps, logs and debris of all kinds are to be removed from the fill or causeway and from the road extending to Walloon Lake, including the 'fish shanties'.

"It is further ordered and adjudged that all bottles, empty cans, cartons, wrappers, and refuse of all kinds are to be removed at least once every two weeks and trash or refuse barrels provided near the shore of Walloon Lake.

"It is further ordered and adjudged that care is to be used to insure that no obstruction is to be made or permitted of or to the small rivulet or 'runoff' at the northern side of the opening into Walloon Lake in order to facilitate and expedite return of the springs or original source of supply of the fresh water in the lake or pond in dispute and prevent further stagnation thereof.

"It is further ordered and adjudged that the removal of the entire fill or causeway, or, in the alternative, construction of the ten (10) foot opening or bridge hereinbefore specified be satisfactorily performed and completed on or before November 15, 1970, at no expense to plaintiffs and that removal of the old 'fish shanty', bottles, empty cans, etc. and 'policing' of the disputed area be done and performed within fifteen (15) days hereof."

We affirm, costs to the plaintiffs.

All concurred.