KURRLE v WALKER

1. APPEAL AND ERROR—FINDINGS OF FACT—COURT RULES.

  Whether an action is in law or in equity, findings of fact will not be set aside unless clearly erroneous, and where a review of the record reveals sufficient facts from which the trial court could have determined that riparian rights existed and that a body of water was navigable, those findings will not be disturbed on appeal (GCR 1963, 517.1).

2. WATER AND WATERCOURSES—LITTORAL OWNERS—LAKE WATERS.

  The rights of a littoral owner in lake waters include the right to use the entire surface and subsurface of the lake waters; each littoral owner shares such rights with all other littoral owners and none may interfere, unreasonably, with the like rights of others.

3. WATERS AND WATERCOURSES—LITTORAL RIGHTS—ACCESS.

  A fence erected by a defendant which blocked plaintiffs' full access to a bayou and interfered with their littoral rights in the entire surface of the bayou could properly be ordered removed.

4. NUISANCE—LITTORAL OWNERS—ABATEMENT—EQUITY.

  The construction of a commercial marina by a defendant on his own property, which interferes with the plaintiffs' littoral rights to the use and enjoyment of a bayou is not a trespass, but a nuisance which a plaintiff may seek to abate in equity (MCLA 600.2940).

5. EQUITY—NUISANCE—ABATEMENT—LEGAL REMEDIES—DAMAGES.

  A nuisance will be abated by equity only when legal remedies are inadequate; to determine whether damages are an adequate remedy the extent of the nuisance, the value of the properties to be destroyed, and similar considerations are weighed to achieve an equitable result, and where complete abatement

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 839.
[2, 3, 6] 56 Am Jur, Waters §§ 273, 282.
[4, 5] 58 Am Jur 2d, Nuisance §§ 142–149.

would be harsh and excessive partial abatement and monetary damages for minor losses of rights is appropriate.

6. WATERS AND WATERCOURSES—LITTORAL RIGHTS—NUISANCE—
   ABATEMENT—DAMAGES.

   Removal of a fence which blocked plaintiff littoral owners' full access to a bayou, and money damages for interference with plaintiffs' other littoral rights, rather than destruction of defendant's entire commercial marina built on his own land as sought by plaintiffs, was the appropriate remedy where virtually the only use which plaintiffs or their predecessors made of the bayou was as a channel for navigation and removal of the fence would restore access to plaintiffs for navigational purposes, the loss of fishing and other recreational rights was minor and could be adequately compensated at law, and defendant had spent $250,000 on the marina (MCLA 600.2940).

Appeal from Antrim, James M. Fitzpatrick, J. Submitted Division 3 June 5, 1974, at Grand Rapids. (Docket No. 17773.) Decided November 6, 1974.

Complaint by Theodore S. Kurrle and Regina A. Kurrle against Charles T. Walker for damages for wrongfully depriving plaintiffs of access to a navigable pond and for an injunction ordering removal of all structures built into a bayou. Judgment for plaintiffs. Defendants appeal. Affirmed in part, reversed in part, and remanded for a determination of damages.

*Dean D. Burns,* for plaintiffs.

*Zerafa & Zerafa, P. C.,* for defendant.

BEFORE: HOLBROOK, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

T. M. BURNS, J. Plaintiffs Theodore S. and Regina A. Kurrle are the land contract vendees of

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Lots 59 and 60 of the Plat of New Highlands, County of Antrim, State of Michigan, and have had possession of said real estate since its purchase in 1965. Defendant Charles T. Walker is the owner of certain real estate described by a metes and bounds description lying immediately adjacent to the above described Lots 59 and 60 and to the south of said lots. Both the plaintiffs' and the defendant's land are bordered on the east by the Torch River, and a navigable pond having a navigable outlet to the Torch River lies partially in the southern portion of plaintiffs' property and partially in the northern portion of defendant's property.

In 1969, defendant began a project whereby he would construct a marina on his property. Pursuant to this project, defendant began dredging the area and also drove pilings across the northern portion of the pond in an east-west direction in such a manner that water lay on both sides of the pilings. Defendant then attached boards to these pilings, thereby erecting a wall which effectively precluded plaintiffs from access to and use of said pond.

On October 6, 1969, plaintiffs filed a complaint in Antrim Circuit Court alleging that defendant had wrongfully driven the aforementioned pilings into the bayou off the Torch River, the water of which encroached on plaintiffs' property, and excluded plaintiffs from erecting and maintaining a fence along his northern boundary to the Torch River, and from erecting wharves on the land in the artificial basin dredged by defendant.

A hearing was held on November 10, 1969, at which defendant attempted to show cause why he should be allowed to continue with the dredging project and the construction of the marina. The

court issued a temporary injunction against the defendant proceeding further in erection or improvement of the wall and further ordering the removal of a part of the wall and pilings in order to allow "reasonable size boats" to approach the plaintiffs' property from the south.

On July 17, 1970, another hearing was held following the issuance of an *ex parte* order by the trial court directing defendant to widen the opening in the fence to ten feet to allow easier passage for boats of plaintiffs and their guests.

Defendant proceeded to construct and erect certain covered docks and piers into the bayou before trial on the substantive issues. On December 28, 1971, the plaintiffs moved to amend their pleadings, seeking $125,000 in damages and an order requiring removal of all docks, piers and other structures which defendant had built into the bayou.

Trial on the merits was held on January 12, 13 and 14, 1972, before the court without a jury. On July 18, 1973, judgment was rendered for plaintiffs and defendant was ordered to remove the entire barricade constructed along the northern portion of said pond as well as all structures, piers, docks, and slips constructed over the waters of, or in the bed of, the pond that interfere with plaintiffs' use of the entire surface of the pond for any purpose. This appeal followed. We have consolidated the numerous questions raised by both parties into two issues which we deem worthy of discussion.

Defendant first contends that the trial court committed reversible error by finding that the plaintiffs had riparian rights on the bayou and that this body of water is and was navigable. We disagree.

Whether an action is in law or equity, principle

regard must be given to the special opportunity of the trial court to judge the credibility of witnesses, and findings of fact will not be set aside unless clearly erroneous. GCR 1963, 517; *Meyering v Russell*, 53 Mich App 695, 701; 220 NW2d 121 (1974); *Alexander v City of Detroit*, 392 Mich 30, 36; 219 NW2d 41 (1974); *Crawley v Schick*, 48 Mich App 728, 734; 211 NW2d 217 (1973); *Rencsok v Rencsok*, 46 Mich App 250, 253; 207 NW2d 910 (1973). A careful and thorough review of the record in the case at bar reveals sufficient facts present from which the trial court could have determined that riparian rights existed on the bayou and that the body of water in question was navigable. Therefore, since no clear error has been demonstrated, the trial court's findings will not be disturbed on appeal.

The second and final issue to be decided on this appeal is whether the defendant's construction of docks and piers on the navigable inlet of the Torch River was such an interference with plaintiffs' riparian rights that the trial court was justified in ordering all structures removed from the water.

In *Rice v Naimish*, 8 Mich App 698, 703; 155 NW2d 370 (1967), this Court defined the right of a littoral (riparian) owner to the use of lake waters as follows:

"Among the rights of a littoral owner is the right to use his upland property to gain access to the lake waters; the right to put out in a boat or on foot from his upland property where it touches the lake waters; the right, after so embarking, to go boating, swimming, water skiing, fishing, ice skating or sledding or to engage in other aquatic sports, in or upon the lake waters; and the right to use the entire surface and subsurface lake waters for such purposes. *Burt v Munger*, 314 Mich 659; 23 NW2d 117 (1946); *Manney v Prouse*, 248 Mich 655; 227 NW 685 (1929); *Kerley v*

*Wolfe,* 349 Mich 350; 84 NW2d 748 (1957). Each littoral owner shares such rights with all other littoral owners and none may interfere, unreasonably, with like rights of the others. *Beach v Hayner,* 207 Mich 93; 173 NW 487 (1919)."

In *Rice,* the plaintiffs constructed a fence which would have interfered with the defendants' riparian rights. The trial court concluded that the defendants were justified in pulling up the posts of the fence. This Court, in affirming the judgment of the lower court, found that defendants were littoral owners and stated at p 704; 155 NW2d 374:

"Nevertheless, if the defendants' land in the bay area were littoral, and the plaintiffs' projected fence interfered with the defendants' exercise of any of the previously described littoral rights, the defendants would be privileged to prevent construction of the fence or to demolish it during construction or thereafter, and the defendant would not need permission of a court to do so."

As we stated earlier, plaintiffs in the instant case were littoral owners and, therefore, had rights in the entire surface of the bayou. It is equally clear from the above discussion that this Court can properly order the removal of the fence which blocked plaintiffs' full access to the bayou.

Plaintiffs, however, desire much more than the mere removal of the barrier fence. They seek the destruction of defendant's entire commercial marina, suggesting that defendant is trespassing on their property. We disagree. All the construction was done on the land owned by defendant, and plaintiffs have the right to use and enjoyment of the bayou for navigation, fishing, swimming, etc. Therefore, there is not a trespass, but rather a nuisance which plaintiffs seek to abate in equity. MCLA 600.2940; MSA 27A.2940.

We are of the opinion that it would be inappropriate for this Court to order the destruction of this $250,000 marina. Plaintiffs have asked for both injunctive and legal relief in the form of damages. Equity will abate nuisances only when legal remedies are inadequate. *Adams v Kalamazoo Ice & Fuel Co,* 245 Mich 261; 222 NW 86 (1928). Michigan courts have been reluctant to bar a lawful business and such action should be taken only where it is essential to abate a continuing nuisance. *Fortin v Vitali;* 15 Mich App 657, 661; 167 NW2d 355 (1969), *appeal after remand,* 28 Mich App 565; 184 NW2d 609 (1970).

"If a nuisance is private and arises out of a particular manner of operating a legitimate business, we will do no more than point to the nuisance and decree the adoption of methods calculated to eliminate the injurious features. *MacKenzie v Frank M Pauli Co,* 207 Mich 456 [; 174 NW 161] (6 ALR 1305) [1919]. Where it is possible to eliminate the objectionable features which infringe upon the ordinary rights of others, equity may so decree instead of compelling an abatement of the entire business. *Waier v Peerless Oil Co,* 265 Mich 398 [; 251 NW 552 (1933)]." *Smith v City of Ann Arbor,* 303 Mich 476, 486; 6 NW2d 752 (1942).

It is clear from the record in the case at bar that virtually the only use which plaintiffs or their predecessors made of the bayou was as a channel for navigation. The bayou was not suitable for swimming due to its shallowness and mucky bottom. While it is true that fishing would no longer be possible, it is also true that the defendant has increased the navigability of the water. The other rights mentioned are so minor that a decree of complete abatement would be shocking to the conscience of this Court.

It has been held that to determine whether

damages at law are an adequate remedy, the extent of the nuisance, the value of the properties to be destroyed and similar considerations are to be weighed to achieve an equitable result. *Turner v Hart,* 71 Mich 128; 38 NW 890 (1888). Removing the barrier fence from in front of plaintiffs' docks will be sufficient to restore to plaintiffs their access to the bayou for navigational purposes. The loss of fishing and other recreational rights on the pond is minor and can be adequately compensated at law.

In two recent cases, Michigan courts have referred similar cases back to the circuit court for more equitable decrees. *Fortin v Vitali, supra; Obrecht v National Gypsum Co,* 361 Mich 399; 105 NW2d 143 (1960). In *Obrecht,* the defendant constructed a shipping complex in the middle of a residential-cottage area without the permission of the state government. The Supreme Court found the complex to be a nuisance, but would only allow monetary relief, stating at p 420, 105 NW2d 152–153:

"Equity cannot now abate that which, originally should have been enjoined. Such a decree would amount to outright destruction and loss of valuable property constituting an even greater wrong than that which the company has perpetrated."

Plaintiffs claim that complete abatement is warranted since the trial court warned defendant not to proceed before he in fact completed the bulk of his construction work. However, no order was ever issued by the trial court to that effect, and there appears to have been no intent to do so, since at that time plaintiffs were merely requesting that the barrier fence be removed.

Since we have concluded that an order requiring destruction of the entire marina would be harsh and excessive, we remand this case to the trial

court for a determination of monetary damages due to the plaintiffs. As the Supreme Court noted in *Obrecht, supra:*

"[W]ith the dredging done and the dock constructed near the approximate center of this sector, we are persuaded by the record that National Gypsum has moved an otherwise lawful industrial operation into an area constituting the wrong place for it. In so doing it has actionably offended the personal and property rights of these plaintiffs and, the *'fait'* being *'accompli'* now beyond judicial abatement, has subjected itself to payment of damages to such of these plaintiffs as may on remand be able to prove same." 361 Mich 418; 105 NW2d 152.

We are of the opinion that the same remedy should be applied in the instant case.

Affirmed in part and reversed in part. Remanded to the Antrim Circuit Court for further proceedings to be conducted in accordance with this opinion. No costs, neither party having fully prevailed. This Court retains no further jurisdiction.

All concurred.