# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD GUNTHER, COURTENAY KONET, and WILLIAM E. MARCUS, individually and as trustee of the WILLIAM E. MARCUS TRUST,

Plaintiffs-Appellant,

v

CHAD APAP, MICHAEL K. STREHL, CASEY J. AMBROSE, and CHRISTY BROWN-AMBROSE, also known as CHRISTY M. BROWN, also known as CHRISTY M. AMBROSE,

Defendants-Appellees.

UNPUBLISHED
October 17, 2017

No. 333169
Oakland Circuit Court
LC No. 2015-150606-CZ

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

This case is a riparian rights dispute in which the plaintiffs, who are lakefront property owners, seek to prevent defendants, who are backlot property owners, from maintaining a fence along a 9-foot pathway to the lake, placing a dock in the lake, and docking boats in the water on a long term basis. The trial court granted summary disposition to defendants under MCR 2.116(C)(10) based on the conclusion that plaintiffs lacked standing to challenge defendants' activities because plaintiffs did not have a property interest in the 9-foot pathway used by defendants to access the lake. Plaintiffs now appeal as of right. We conclude that the trial court properly granted defendants' motion for summary disposition insofar as plaintiffs' claims related to the fence on the pathway because plaintiffs have not established that they have a property interest in the path. However, because plaintiffs do not need a property interest in the 9-foot strip to challenge defendants' riparian conduct which directly and significantly impacts plaintiffs' riparian rights, the trial court erred by granting summary disposition to defendants with regard to defendants' maintenance of a dock and docking of boats in the lake. We therefore affirm in part, reverse in part, and remand for further proceedings.

Plaintiffs own neighboring lakefront properties on Walled Lake. Plaintiffs Richard Gunther and Courtenay Konet own "Lot 24," while plaintiff William Marcus resides on "Lot 23," which is owned, in part, by The William E. Marcus Trust ("the trust"). Plaintiffs' respective properties are separated by a 9-foot strip of land—specifically, the most western 9-feet of Lot 23.

-1-

This 9-foot strip runs from the lake to East Walled Lake Drive. Defendants own backlot properties on East Walled Lake Drive, and they use the 9-foot strip to access the lake. Defendants constructed a split rail fence along two sides of the 9-foot strip of land, separating it from plaintiffs' properties. In the water, at the end of the 9-foot strip, defendants have also erected a dock where they moor their boats. According to plaintiffs, the placement of the dock is such that defendants' boats extend beyond the 9-foot strip onto water above the bottomlands in front of plaintiffs' respective properties. Plaintiffs have maintained that defendants leave their boats in front of plaintiffs' homes for long periods of time, "overnight each and every night during the summer."

In December of 2015, plaintiffs filed the current lawsuit, alleging trespass and seeking a permanent injunction requiring defendants to remove the dock, take down the fence, stop docking boats in front of plaintiffs' property, and to refrain from future trespasses. In their complaint, plaintiffs alleged that the trust owned the 9-foot strip of land in question. According to plaintiffs, defendants had a right of way over the strip solely for pedestrian purposes and they had no riparian rights, meaning that they had no right to construct a dock and no right to keep boats in the water on a long term basis.

Defendants filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10). Primarily, defendants argued that plaintiffs' claims for trespass and a permanent injunction must fail because plaintiffs do not own the 9-foot strip of land in question and thus plaintiffs could not assert a claim of trespass relating to the strip nor could they seek to enjoin defendants' use of the strip. Plaintiffs filed a response to defendants' motion, arguing that the trust owned the 9-foot strip and that, in any event, defendants' activities extended beyond the strip. In the trial court, plaintiffs also sought leave to amend their complaint to add claims of nuisance and an action to quiet title.

Following the hearing, the trial court issued a written opinion and order, granting defendants' motion for summary disposition under MCR 2.116(C)(10). The court determined that summary disposition was appropriate because, according to the parties' various deeds, plaintiffs "do not have any ownership interest in the nine-foot strip of land located on Lot 23." Because plaintiffs do not own the 9-foot strip, the trial court reasoned that the plaintiffs "do not have legal standing to maintain this lawsuit." Given this decision, the trial court also denied plaintiffs' request to amend their complaint because "it would be futile." Plaintiffs filed a motion for reconsideration, which the trial court denied. Plaintiffs now appeal as of right.

On appeal, plaintiffs argue that the trial court erred by granting summary disposition to defendants. Plaintiffs maintain that the trial court's determination regarding plaintiffs' lack of ownership in the 9-foot strip was incorrect and, in any event, not dispositive of plaintiffs' claims. Specifically, plaintiffs assert that the trust owns the 9-foot strip as demonstrated by the trust's chain of title. Even if the trust does not own the strip, plaintiffs assert that defendants may not trespass onto neighboring property and they emphasize that defendants' activities extend beyond the strip over bottomlands owned by plaintiffs, implicating plaintiffs' riparian property rights. Additionally, based on these same considerations, plaintiffs argue that amendment to add claims of nuisance and quiet title would not be futile, and thus the trial court abused its discretion by denying plaintiffs' request for leave to amend their complaint under MCR 2.116(I)(5).

# I. STANDARDS OF REVIEW

We review de novo a trial court's decision to grant a motion for summary disposition. *Barnes v Farmers Ins Exch*, 308 Mich App 1, 5; 862 NW2d 681 (2014). A motion under MCR 2.116(C)(10) "tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Bagby v Detroit Edison Co*, 308 Mich App 488, 490; 865 NW2d 59 (2014). "In considering a motion pursuant to MCR 2.116(C)(10), a court considers affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in a light most favorable to the nonmoving party." *Watts v Mich Multi-King, Inc*, 291 Mich App 98, 102; 804 NW2d 569 (2010). "A genuine issue of material fact exists when reasonable minds could differ on a material issue." *Braverman v Granger*, 303 Mich App 587, 596; 844 NW2d 485 (2014).

Questions of law—including the proper interpretation of a deed, questions of standing, and common law riparian issues—are also reviewed de novo. *In re Rudell Estate*, 286 Mich App 391, 403; 780 NW2d 884 (2009); *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 621; 873 NW2d 783 (2015); *Holton v Ward*, 303 Mich App 718, 725; 847 NW2d 1 (2014).

In comparison, we review a trial court's decision on a motion to amend a complaint for an abuse of discretion. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014). Pursuant to MCR 2.116(I)(5), when summary disposition is granted under MCR 2.116(C)(10), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." Ordinarily, under this rule, leave to amend pleadings "should be freely granted to the nonprevailing party upon a grant of summary disposition unless the amendment would be futile or otherwise unjustified." *Lewandowski v Nuclear Mgt*, 272 Mich App 120, 126-127; 724 NW2d 718 (2006).

# II. RIPARIAN RIGHTS

The present case involves riparian rights relating to an inland lake.[1] Riparian rights attach to land that actually touches water. *Morse v Colitti*, 317 Mich App 526, 536; 896 NW2d 15 (2016). Owners of riparian lands enjoy special and exclusive property rights, including "rights to erect and maintain docks and to permanently anchor boats off the shore." *Id.* See also *2000 Baum Family Trust*, 488 Mich at 166; *Holton*, 303 Mich App at 725. A riparian owner of an inland lake owns the bottomland to the middle of the lake. *Putnam v Kinney*, 248 Mich 410, 412; 227 NW 741 (1929); *West Mich Dock & Mkt Corp v Lakeland Investments*, 210 Mich App 505, 510; 534 NW2d 212 (1995). The riparian owner does not "own the water," but he or she "has unlimited access thereto from [his or her] own land." *NeBoShone Ass'n v State Tax Comm*,

---

[1] Technically, land which abuts a lake is defined as "littoral," while the term "riparian" refers to land abutting a river. *2000 Baum Family Tr. v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010). Nevertheless, the term "riparian" is often used in reference to lakefront property and it will be used as such in this opinion. See *id.*

58 Mich App 324, 333; 227 NW2d 358 (1975). "[W]here there are several riparian owners on an inland lake, they may use the surface of the whole lake for boating, swimming, fishing, and other similar riparian rights, as long as they do not interfere with the reasonable use of the waters by other riparian owners." *West Mich Dock*, 210 Mich App at 512-513. The "reasonable use" of water depends on the facts of each case, and reasonableness is evaluated based on a three-pronged test, as follows:

> First, attention should be given to the size, character and natural state of the water course. Second, consideration should be given the type and purpose of the uses proposed and their effect on the water course. Third, the court should balance the benefit that would inure to the proposed user with the injury to other riparian owners. [*Id.* at 513 (citation omitted).]

Notably, the rights of the general public are not co-extensive with the rights of riparian owners. *Bott v Comm of Na. Res of State of Mich Dep't of Nat Res*, 415 Mich 45, 64; 327 NW2d 838 (1982). In comparison to riparian owners, "[n]onriparian owners and members of the public who gain access to a navigable waterbody have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming. An incident of the public's right of navigation is the right to anchor boats *temporarily*." *Dyball v Lennox*, 260 Mich App 698, 707-708; 680 NW2d 522 (2004) (emphasis added). Except for these public rights, "the complete control of the use of . . . land covered with water is in the riparian owner." *Heeringa v Petroelje*, 279 Mich App 444, 451; 760 NW2d 538 (2008). "[F]ull riparian rights and ownership may not be severed from riparian land and transferred to nonriparian backlot owners;" but Michigan law "allows the original owner of riparian property to grant an easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian." *Dyball*, 260 Mich App at 706. If there is an easement providing access to the lake, the language of the easement determines whether the easement holder has been granted any riparian rights. *Id.* at 708. See also *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). "Reservation of a right of way for access does not give rise to riparian rights, but only a right of way." *Dyball*, 260 Mich App at 706.

## III. ANALYSIS

In this case, plaintiffs are riparian owners who have filed suit against individuals alleged to be nonriparian property owners, bringing claims of trespass and seeking an injunction requiring defendants to remove the fencing on the 9-foot path, remove the dock from the water, and cease mooring boats in the lake on a long term basis. In response to defendants' motion for summary disposition, plaintiffs also sought leave to amend to add claims of nuisance as well as to quiet title. While the claims relating to the fence were properly dismissed, plaintiffs have standing to pursue their claims relating to the dock and boats, and thus these claims may proceed on remand.[2]

---

[2] We note that, on appeal, the parties dispute whether plaintiffs' various claims are barred by the statute of limitations. This issue was not addressed by the trial court and it was not included by

## A. TRESPASS/NUISANCE

"The right to exclude others from one's property and the right to enjoy one's property are two distinct possessory interests, 'violations of which give rise to the distinct causes of action respectively of trespass and nuisance.' " *Wiggins v City of Burton*, 291 Mich App 532, 554-555; 805 NW2d 517 (2011) (citation omitted). "A trespass is an unauthorized invasion on the private property of another." *Dalley v Dykema Gossett*, 287 Mich App 296, 315; 788 NW2d 679 (2010). "To establish a trespass, there must be proof of an unauthorized intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Morse*, 317 Mich App at 551. "[A] riparian landowner's riparian rights to water-covered bottomlands are, other than the public's right of reasonable access to the water itself, indistinguishable from ordinary fee ownership of dry land." *Heeringa*, 279 Mich App at 451. In other words, an intrusion on riparian property rights may constitute a trespass. *Id.* See also *Difronzo v Vill of Port Sanilac*, 166 Mich App 148, 154-155; 419 NW2d 756 (1988); *Johnson v Burghorn*, 212 Mich 19, 28; 179 NW 225 (1920). In comparison, nuisance is an interference with a plaintiff's use and enjoyment of his or her land. *Morse*, 317 Mich App at 554. Interference with a riparian owner's use and enjoyment of the water may give rise to a claim for nuisance. *Kurrle v Walker*, 56 Mich App 406, 411; 224 NW2d 99 (1974).

"[R]ights relating to water may be protected by means of injunction, including the obstruction of water rights [and] trespass on water rights." *Bauerle v Bd of Co Rd Com'rs for Charlevoix Co*, 34 Mich App 475, 481; 191 NW2d 509 (1971). For instance, an injunction may be granted to prevent a boater from indefinitely anchoring his vessel over the waters of a plaintiff's subaqueous lands. See, e.g., *Hall v Wantz*, 336 Mich 112, 119; 57 NW2d 462 (1953). "Injunctive relief is an extraordinary remedy that courts normally grant only when (1) justice requires it, (2) there is no adequate remedy at law, and (3) there exists a real and imminent danger of irreparable injury." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 106; 662 NW2d 387 (2003) (citation and quotation marks omitted).

### i. THE FENCE

---

the parties in their statement of the questions presented. As such, we need not reach this issue. See MCR 7.212(C)(5); *Hines v Volkswagen of Am, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005); *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003). If we considered the issue, it is clear that plaintiffs' monetary claims relating to the fence accrued, at the latest, in 2005, meaning that these claims are time barred under MCL 600.5805(10). See *Morse*, 317 Mich App at 550-554. In contrast, with regard to the dock and boats, while defendants claim that there have been boats in the water since 2009, according to the statement of Scott Drahuse, the dock and boats being challenged by plaintiffs were placed in the water in June of 2015. Plaintiffs filed suit in December of 2015, meaning that their claims were timely filed. MCL 600.5805(1). Moreover, insofar as plaintiffs seek injunctive relief in the form of their requests to prevent defendants' encroachment over plaintiffs' bottomlands, such a claim to quiet title is subject to a 15 year statute of limitations. See *Morse*, 317 Mich App at 552-553. Overall, excepting plaintiffs' monetary claims relating to the fence, plaintiffs' claims are not time-barred.

To the extent plaintiffs seek removal of the fence, their claims were properly dismissed because the documents in the lower court record do not support their contention that the trust holds title to the 9-foot strip of land on which the fence is located.

The 9-foot strip of land at issue is the western most portion of Lot 23. Gunther and Konet own Lot 24; they have no interest in Lot 23. From the deeds contained in the lower court record, it appears that the trust owns Lot 23 *except* for the 9-foot strip.[3] Specifically, the trust's deed describes the property owned by the trust as: "Lot 23 Exc W 9 ft." Further, the trust obtained the property from Marcus, whose deed described the property he owned at the time of the conveyance to the trust as "LOT 23 EXCEPT THE WEST 9 FEET . . . ." While older deeds in Marcus's chain of title suggest that Marcus's predecessors may have owned all of Lot 23 subject to an easement for the backlot property owners, the fact remains that Marcus and the trust did not receive *all* of Lot 23. Instead, they received Lot 23 *except* for the west 9-feet. Such language unambiguously created an exception that excluded the west 9-feet from the conveyance to Marcus, meaning that the 9-foot strip remained with the grantor. See *Thomas v Jewell*, 300 Mich 556, 561; 2 NW2d 501 (1942); *Hasselbring v Koepke*, 263 Mich 466, 479; 248 NW 869 (1933). As a result, based on the documents in the record before us, the ownership of the 9-foot strip appears to rest, not with Marcus or the trust, but with whomever in the trust's chain of title first conveyed Lot 23 except for the 9-foot access. From the available evidence, none of the plaintiffs have shown an ownership interest in the 9-foot strip, and thus they cannot show a trespass resulting from the fence on the 9-foot strip. See *Difronzo*, 166 Mich App at 155 ("In order to recover for a trespass, plaintiff must have title."). Moreover, plaintiffs have not alleged any reason or offered any evidence that would justify a permanent injunction ordering the removal of the fence. Consequently, the trial court properly granted summary disposition to defendants relating to the fence.[4]

## ii. THE DOCK AND BOATS

In comparison to claims relating to the fence, the trial court erred by concluding that plaintiffs' failure to establish ownership of the 9-foot strip deprived plaintiffs of standing to challenge defendants' construction of a dock and defendants' docking of boats in the lake indefinitely for long periods of time.

---

[3] On appeal, plaintiffs argue that, in actuality, the strip is only 4½ feet wide. Plaintiffs have not shown that they own the strip, making it immaterial for purposes of the fence whether defendants properly have access to 9 feet or 4½ feet because, in either case, plaintiffs do not own or control 9-feet.

[4] To the extent plaintiffs sought to amend their complaint to add a claim of nuisance, there has been no allegation that the fence constitutes a nuisance, meaning that any effort by plaintiffs to amend their complaint to assert that the fence is a nuisance would have been futile. Thus, the trial court did not abuse its discretion by denying a request to add this futile claim. See *Lewandowski*, 272 Mich App at 126-127.

Although plaintiffs have not shown an ownership interest in the 9-foot strip, plaintiffs are undoubtedly riparian owners on Walled Lake. Indeed, they own property neighboring the disputed dock and boats that have been placed by defendants. Notably, plaintiffs have alleged—and offered evidence, including photographs and sworn statements—indicating that the placement of the dock is such that defendants' boats extend beyond the water frontage of the 9-foot strip onto the water above plaintiffs' bottomlands in front of Lot 24 and the remainder of Lot 23. In other words, plaintiffs have offered evidence that defendants have moored boats in front of plaintiffs' waterfront properties. Plaintiffs have the absolute right to control their bottomlands, *Heeringa*, 279 Mich App at 451, and they have a right of access to the water—by boat or on foot—from anywhere their property touches the lake waters, *Rice v Naimish*, 8 Mich App 698, 703; 155 NW2d 370 (1967). By indefinitely keeping boats in front of plaintiffs' homes, defendants have trespassed on plaintiffs' riparian rights to make use of the their bottomlands and to access the lake from portions of their lakefront property. Cf. *Hall*, 336 Mich at 117, 119; *Difronzo*, 166 Mich App at 155. Moreover, as riparian owners, plaintiffs have the right to make reasonable use of the *entire* surface and sub-surface of the lake. *Bauerle v Bd of Co Rd Com'rs for Charlevoix Co*, 388 Mich 520, 525; 201 NW2d 799 (1972); *Burt v Munger*, 314 Mich 659, 664; 23 NW2d 117 (1946); *Rice*, 8 Mich App at 703. The placement of the dock interferes with this right and constitutes a potential nuisance. See *Kurrle*, 56 Mich App at 411.

As riparian owners whose property and riparian interests are being adversely affected by defendants' riparian use of the 9-foot strip, plaintiffs have standing to pursue these claims and to challenge defendants' riparian rights. The placement of defendants' dock and boats has directly impacted plaintiffs' property rights and they have offered evidence of particularized injury, including evidence that the boats are obstructing their views and interfering with their enjoyment of the lake. Cf. *Wenners v Chisholm*, unpublished opinion of the Court of Appeals, issued July 20, 2017 (Docket No. 332654); slip op at 1, 3-4 (finding that the plaintiffs had standing to challenge the defendants' riparian rights relating to the defendants' use of a pathway to the lake where the owner of the pathway was "unknown").[5] See also *Higgins Lake Prop Owners Ass'n*, 255 Mich App at 91 (concluding that a nonprofit comprised of lakefront property owners had standing to raise claims relating to the public's overuse of roads leading to the lake). Because plaintiffs had standing to litigate these claims and to contest defendants' riparian activities, the trial court erred by granting summary disposition to defendants on this basis. Further, given that plaintiffs' failure to demonstrate an ownership interest in the 9-foot strip is not dispositive of their ability to challenge defendants' riparian rights, the trial court abused its discretion by concluding that a claim for nuisance was futile and by denying plaintiffs' motion to amend their complaint. See MCR 2.116(I)(5).

In contrast, defendants contend that plaintiffs do not have a viable claim for trespass or nuisance because defendants' boats are attached to their dock, not plaintiffs' bottomland. In other words, according to defendants, given that plaintiffs do not own the 9-foot strip, they

---

[5] "Although unpublished opinions of this Court are not binding precedent, MCR 7.215(C)(1), they may, however, be considered instructive or persuasive." *Adam v Bell*, 311 Mich App 528, 534 n 1; 879 NW2d 879 (2015) (citation and quotation marks omitted).

cannot complain about the dock because the dock is attached to the 9-foot strip. And, if plaintiffs cannot complain about the dock, defendants assert that plaintiffs have no viable complaint about the boats because the boats are a reasonable use of the dock that does not interfere with plaintiffs' riparian rights. However, defendants' argument assumes too much. That is, defendants attempt to place themselves on par with riparian property owners by contending that their interests should be balanced equally with plaintiffs' interests under *West Mich Dock & Mkt Corp*, 210 Mich App at 512-513. But, in actuality, if defendants do not own the 9-foot strip and if their easement over the 9-foot strip does not include riparian rights, then at most they would have the right to use the water in keeping with the general public.[6] See *Dyball*, 260 Mich App at 707-708. As non-riparian backlot owners, they would have no right to construct a dock in the lake or to indefinitely moor boats in front of plaintiffs' homes. See *Hall*, 336 Mich at 117, 119; *Dyball*, 260 Mich App at 707-708. In other words, the balancing test in *West Mich Dock*, 210 Mich App at 512-513, applies to balance competing rights and interests in order to ensure "reasonable use" of waters by riparian owners and to prevent riparian owners from interfering with the rights of others; it does not afford those without riparian rights the authority to construct docks or moor boats indefinitely. In short, if defendants do not have riparian rights, they are limited to public use of the lake, and they cannot unilaterally claim that their construction of a dock or the indefinite docking of boats in the water constitutes a

---

[6] To the extent defendants claim that they do in fact have riparian rights, their claims are unproven and, at best, a question of fact remains. In particular, Chad Apap's deed states that he has a "right of way over the West 9 feet of Lot 23 . . . ." Typically, "a right of way" does not given rise to riparian rights. *Dyball*, 260 Mich App at 706. Based on his deed, it is thus challenging to see how Apap could establish riparian rights to maintain a dock or indefinitely dock his boat in front of plaintiffs' homes. In comparison, the Ambroses' deed and Strehl's land contract contain language claiming "an undivided ½ interest in West 9 feet of Lot 23." However, plaintiffs have offered persuasive challenges to this claim of title to the 9-foot strip. That is, it is unclear on what basis such language was introduced into the deed of the Ambroses' predecessor. Plaintiffs have offered evidence that, historically, the 9-foot strip was owned by the owner of Lot 23 and there existed a right of way for pedestrian purposes. Defendants have offered no evidence indicating that the strip was ever transferred, as a fee simple, to any of the Ambroses' predecessors. Nor have defendants otherwise explained how they purportedly gained ownership of the strip. While at some point, the "undivided ½ interest language" appeared in the Ambroses' chain of title, "[i]t is axiomatic that a person cannot convey greater title than he possesses." *Pellerito v Weber*, 22 Mich App 242, 245; 177 NW2d 236 (1970). And, a "deed purporting to convey greater title, or more land, than possessed by a grantor, conveys only the title and land that the grantor possesses." *Bixby v Giesy*, unpublished opinion of the Court of Appeals, issued July 12, 2005 (Docket No. 261163); slip op at 3. In other words, plaintiffs have presented evidence, consisting of the chains of title to the properties, indicating that the conveyance of the strip in fee simple to the Ambroses was invalid because the previous owners could not have conveyed to the Ambroses what they did not possess. This issue regarding actual ownership of the 9-foot strip has not been addressed by the trial court, and there are gaps in the chains of title, resulting in considerable confusion among the deeds regarding ownership and the size of the strip. We leave it to the trial court to sort out this issue in the first instance.

"reasonable use" of the lake. It is thus central to the resolution of this case whether defendants have riparian rights; and, given that plaintiffs have standing to challenge defendants' riparian activities, the trial court erred by resolving this case based on plaintiffs' lack of ownership interest in the 9-foot strip.[7]

On remand, relating to the dock and boats, plaintiffs may pursue their claims for trespass, including their requests for injunctive relief, and they may amend their complaint to add claims for nuisance.

## B. QUIET TITLE

Aside from claims of trespass and nuisance, plaintiffs also sought to add a claim to quiet title. To the extent plaintiffs seek to quiet title to the 9-foot strip, they have failed to set forth a prima facie case and thus amendment to add such a claim would have been futile. More specifically, in a quiet title action, the plaintiff bears the initial burden of establishing a prima facie case of title. *Trademark Props of Mich, LLC v Fed Nat'l Mortg Assn*, 308 Mich App 132, 138; 863 NW2d 344 (2014). A prima facie case requires the plaintiff to present sufficient evidence that the plaintiff acquired and now possesses some interest, legal or equitable, in the property. *Beulah Hoagland Appleton Qualified Pers Residence Trust v Emmet Co Rd Com'n*, 236 Mich App 546, 550; 600 NW2d 698 (1999). As already discussed, Gunther and Konet lack any interest in Lot 23; and, based on the available documents, the trust has failed to show that it has any interest in the 9-foot strip. Instead, it appears that the trust owns Lot 23 *except* for the 9-foot strip. Consequently, plaintiffs cannot make out a prima facie case to quiet title in the 9-foot strip. Thus, any effort to add such a claim would be futile, and the trial court did not abuse its discretion by denying leave to amend plaintiffs' complaint to add an action to quiet title to the 9-foot strip. *Lewandowski*, 272 Mich App at 126-127.

However, insofar as plaintiffs seek to enjoin defendants from docking their boats in front of land belonging to plaintiffs and above bottomlands belonging to plaintiffs, plaintiffs should be allowed to proceed with a claim to quiet title or for ejectment. See *Morse*, 317 Mich App at 544 n 12. Fairly read, plaintiffs claim that defendants have intruded on their property rights and effectively sized a portion of their property to the extent that the placement of defendants' boats prevents plaintiffs from making use of their bottomlands and enjoying the lake. Cf. *id.* at 552. As discussed, plaintiffs are riparian property owns with a clear right to control their bottomlands. In these circumstances, amendment to allow a claim to quiet title to the portions of property

---

[7] Even if defendants own the 9-foot strip, questions of fact remain that preclude summary disposition. That is, as noted, defendants' activities have extended beyond the 9-foot boundary lines and their boats are encroaching on plaintiffs' property. Even as riparian neighbors, defendants would not necessarily have the right to encroach on plaintiffs' property in this manner. See *Heeringa*, 279 Mich App at 451 ("[The] right to the covered lands in front has always been held to exclude any adjacent claimant from intercepting in any way the full extent indicated by the width at the shore."). Instead, in these circumstances, the balancing test in *West Mich Dock*, 210 Mich App at 512-513, should be applied. And, this balancing test is a fact-dependent inquiry, best resolved by the trial court. See *id.*

which plaintiffs do own would not be futile. On remand, plaintiffs should be allowed to proceed with these claims to protect their interests and to prevent defendants' interference with their property rights, including claims to quiet title and eject defendants. See *id.* at 544 n 12, 552.

## IV. CONCLUSION

In sum, the trial court properly dismissed plaintiffs' claims relating to the fence. However, with regard to the dock and the boats in the water, plaintiffs' apparent lack of ownership interest in the 9-foot strip of land is not dispositive in this case. Instead, the question is whether defendants' exercise of riparian rights constitutes a trespass or a nuisance given the riparian rights and property undisputedly belonging to plaintiffs. As neighboring riparian owners, whose riparian rights are being impacted by defendants' riparian activities, plaintiffs have standing to pursue these claims. The trial court thus erred by granting summary disposition to defendants with respect to plaintiffs' claims for trespass relating to the dock and boats, and they may pursue their requests for injunctive relief. On remand, plaintiffs should be allowed to amend their complaint to add claims for nuisance involving the dock and boats, and they should be allowed to add a claim to quiet title to their riparian property.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly